JAMES H. LETTS, Appellant, v. THE WABASH RAILROAD COMPANY, Respondent.

Kansas City Court of Appeals, May 25, 1908.

1. COMMON CARRIERS: Live Stock: Safe Unloading: Pleading. The carrier should provide for the safety of animals transported while they are being loaded and unloaded; and the averment in a petition is construed to mean more than merely that the platform where the mare was unloaded was unsafe but that it was an unsafe place by reason of its surroundings.

2. ——: ——: Notice. The requirement in a contract for shipping live stock that notice of loss be given within a limited period is reasonable and enforcible; and a provision that no claim for damages shall be allowed unless there is notice in writing covers not only loss in transportation but also for unloading the stock. Cases distinguished.

3. ——: ——: ——: Evidence: Waiver. Evidence relating to the giving of notice of the injury to a mare is held to show that no notice was given, since the evidence rebutted the prima-facie case arising from the mailing of the notice and failed to show a waiver.

4. ——: ——: ——: Extent of Damages: Reasonable Time. Where the extent of the damages sustained cannot be ascertained within the time limited in the contract, notice thereof should be given within a reasonable time after such ascertainment and failure to give notice within such time is fatal.

Appeal from Livingston Circuit Court.—*Hon. Joshua W. Alexander,* Judge.

AFFIRMED.

STATEMENT.—This is a suit against the Wabash Railroad Company for damages, growing out of the shipment of a valuable trotting mare from Carrollton to Moberly on May 26, 1903. On that date plaintiff was the owner of the mare in question, "Hazel L." He had her at Carrollton in charge of Joe O'Rourke, his trainer. On that day O'Rourke shipped "Hazel L." and four other horses that were in his charge from Carrollton to Moberly over defendant's line of railroad, leaving Carrollton about 11 o'clock in the morning, and reaching Moberly about 6:30 in the evening. O'Rourke went on the same train with the horses, and as soon as he arrived at Moberly, saw defendant's yardmaster and asked him to set the car at defendant's stock chute to be unloaded. The yardmaster promised him to do so. O'Rourke then went to the Fair grounds to arrange stalls for his horses, and returned about 9:30. When he got back he found the car not at the defendant's stock chute, but at its freight platform, where it had been left by the defendant to be unloaded; and some of his helpers were just preparing to unload the horses.

This platform is a long platform south of defendant's freight depot and about level with the floor of the freight car. From this platform there is a decline at the south end to another platform that is about level with the grounds and with the railroad tracks on either side. Defendant's yards through Moberly extend north and south. On the west side of this platform there is one track, and west of that a street; on the east there are a number of tracks, and beyond them a street, both streets being parallel with the tracks.

At the time these horses were unloaded this track on the west was blocked with a string of stock cars extending all the way from the freight platform south to the place where this track joins the track to the east; so there was no possible way of getting the horses out except to take them east from the platform, either to

the street beyond the yard or across the first track and then down between tracks to some street or crossing to the north or south. All of the horses were safely unloaded and taken from defendant's premises except "Hazel L." She was safely taken from the car to the high platform, down the decline and over the low platform to the ground, and then, while being led across the first track, caught the shoe on her left hind foot on a spike that was sticking up in defendant's track, by which she was thrown to the ground and her left leg broken between the foot and ankle.

This spike, upon which the mare caught her foot, was one of the spikes by which the south rail of the first track to the north of the freight platform was attached to the tie. The witnesses examined it the morning following the accident, and say that it was sticking up about three-fourths of an inch above the rail, that it had not been driven down to the rail. A number of witnesses testified that the mare was carefully handled, and that she was injured while being removed in the only possible way from defendant's premises. The accident occurred in the nighttime, and the evidence shows that the night was cloudy and dark.

"The negligence complained of in the petition is the failure of the defendant to set the car at the stock chute or at any other safe and convenient place for the horses to be unloaded and removed from defendant's premises, and the negligent requiring of plaintiff to unload the mare at defendant's freight platform, which was a dangerous and unsafe place to unload and from which to remove the animals from defendant's premises. The petition alleges that by reason of the injury the mare was rendered worthless and plaintiff damaged in the sum of $1,999.99.

The answer denies all negligence on the part of the defendant, sets up a written contract of shipment providing for a limited liability in consideration of a re-

duced rate of freight, and setting up a stipulation in the contract to the effect that no claim for loss or damage which might accrue to the shipper should be allowed or paid to him or sued for in any court unless such claim be made in writing, verified by affidavit, and delivered to the general freight agent of the defendant at his office in St. Louis within ten days from the time the stock was removed from the car, and also sets up that the plaintiff failed to give this notice, and pleads this as a bar to plaintiff's right to maintain his action.

Plaintiff's reply denies that he received a reduced rate of freight, and alleges that the written contract was without consideration and void, that the defendant had waived the provision for notice in its contract, and by its conduct was stopped from insisting upon the notice being given.

The evidence shows that plaintiff lives in Loosa county, Iowa; that he was at home, in Iowa, at the time these horses were shipped; that on the day following the accident one of the men who accompanied the horses notified him of the injury to "Hazel L.," and that in response to that notice he came immediately to Moberly. Upon his arrival in Moberly he gave notice to McRoberts, defendant's freight agent at Moberly. The injury occurred about three hundred feet from McRoberts' office. McRoberts went with plaintiff from his office to place of the accident, which was pointed out to him by plaintiff and O'Rourke. McRoberts asked him if this was the only way the horses could have been taken out, and they explained to him that it was, for the reason that the west track was blocked. McRoberts gave them the name of the freight claim agent at St. Louis, Mr. Becker, and told them to notify him. He also directed them to see Smith, the local claim agent at Moberly, which they did. They had a talk with Smith, and he also directed them to Becker, the freight

claim agent, and told them that Becker was the man to whom the plaintiff's claim should be referred; and gave plaintiff an envelope directed to Becker, at his office in St. Louis. After having this talk with Smith, plaintiff went down town and counseled an attorney, Mr. Rothwell, and Rothwell prepared a notice of his claim, which plaintiff mailed to Becker.

Plaintiff offered a copy of this notice in evidence, a copy made by Rothwell at the time the notice was prepared; but the defendant objected to the introduction of this copy, on the ground that the notice was not directed to the officer named in the contract to whom notice must be given, that it was not the kind of notice called for in the contract, and not the original notice. Thereupon, for the purpose of laying a foundation for the introduction of secondary evidence as to the contents of the notice, plaintiff called Becker, defendant's freight claim agent, to the witness stand. He testified that at the time of the injury to plaintiff's mare, he was and since that time has continued to be defendant's freight claim agent at St. Louis; that the offices of freight claim agent and general freight agent are separate and distinct offices, and that Mr. S. B. Knight was at the time of the injury to plaintiff's horse, and at the time of the trial, the general freight agent of the defendant at St. Louis. He also testified that since being subpoenaed to attend the trial he had made an examination of the records and files at his office for records and files pertaining to plaintiff's claim, and that he had not found any record there of a claim being made by the plaintiff at any time from May 25 to December 31, 1903. He further said that if such communication had been received by him he would have assigned it a claim number, put it on the books and begun an investigation of the claim. From the fact that no such record could be found in his office, he was quite positive that no notice of a claim had ever been received by him from

plaintiff. Thereupon plaintiff again offered the copy of this notice; and the defendant again objected to its being received in evidence, on the ground that the plaintiff had conclusively established that no such notice was received by the general claim agent at St. Louis, and that any effort on plaintiff's part to prove that such notice was received by the general claim agent would be an effort on his part to impeach the testimony of his own witness. The court sustained the objection, and in doing so remarked: "In the first place the contract provides that the notice should be given to the general freight agent; the testimony shows that Mr. Knight was the general freight agent; that no such notice was given to him or Mr. Becker. Objection to paper in evidence sustained. The plaintiff excepted to this ruling. The copy of this notice so excluded by the court, is as follows:

"Moberly, Mo., May 27th, 1903.
"Mr. M. L. Becker, Freight Claim Agent,
   "Wabash R. R. Co.,
     "St. Louis, Mo.

"Dear Sir: I take advantage of this opportunity of informing you that on the evening of May 25th, 1903, at Moberly, Missouri, upon unloading a certain valuable mare, to-wit, known as Hazel El (L), said animal was injured without damage on my part, in any wise, in the sum of unknown damages to be determined by developments hereafter. Whatever damages are right I want to receive. Nothing more, nothing less.
    "Yours truly,

Plaintiff testified that neither Becker nor any officer nor agent of the defendant ever at any time, nor in any manner, objected to this notice of his claim on the ground that it was not sworn to nor on any other ground. He also testified that a short time after mail-

ing the notice to Becker he received a letter from Smith, the claim agent whom he had seen at Moberly; and, in response to that letter, went to Moberly to see Smith about an adjustment of his claim. He did not find Smith at Moberly; and it was reported to him there, by someone in the building that a wreck had occurred and Smith had gone to the wreck. This visit of plaintiff to Moberly was made the last week in July, 1903.

When plaintiff came back to Moberly in July, he had Mr. Rothwell prepare another notice to defendant of his claim, and mailed that to Mr. Becker. This notice was dated August 1, 1903, and mailed on that date. Plaintiff testified that neither Becker nor any other officer nor agent of the company ever made any objection to this notice on any account whatever; and furthermore that in response to that notice he received a letter from Smith, the claim agent, which was turned over to Mr. Rothwell. Plaintiff offered a copy of this notice in evidence, the copy having been made by Rothwell at the time the original notice was prepared. Defendant objected to the copy of this notice being received in evidence because no notice was given to the defendant to produce the original and because it did not show nor tend to show a compliance with the contract of shipment nor to prove or disprove any issue in the case. The court sustained the objection on the ground that it did not tend to show a compliance with the provision of the contract requiring notice; and plaintiff excepted to this ruling of the court. This notice, so rejected by the court, is set out at length in the abstract of record.

The evidence for the plaintiff shows that the mare in question was a valuable trotting mare, five years old, capable, after sufficient training, of going a mile in 2:10, and the witnesses estimated her value before the injury at all the way from $2,000 to $5,000; they also say that after the injury she was totally worthless as a speed animal, worth nothing for road purposes, and en-

tirely without value except as a brood mare, and the highest valuation put on her by any witness after the injury was $150. At the close of plaintiff's case the defendant offered, and the court sustained, a demurrer to plaintiff's evidence; and judgment was rendered for the defendant," and plaintiff appealed.

*James H. Letts* and *Bresnehen & West* for appellant.

(1) The defendant was required to furnish a safe place for the unloading of plaintiff's horse, and a safe place from whence to remove said horse from its premises. Mason v. Railway, 25 Mo. App. 473; McCollum v. Railway, 34 Mo. App. 23; Cooke v. Railway, 57 Mo. App. 471; Kincaid v. Railway, 62 Mo. App. 365; Tracy v. Railroad, 80 Mo. App. 381; 5 Am. and Eng. Ency. of Law (2 Ed.), p. 431. (2) If plaintiff's loss was one of which he was required to notify the defendant, in accordance with the provisions of the written contract, the defendant, by its conduct, has waived the giving of that notice. Rice v. Railway, 63 Mo. App. 314; Baker v. Railway, 19 Mo. App. 321; Hess v. Railway, 40 Mo. App. 202; Harned v. Railway, 51 Mo. App. 482; Richardson v. Railway, 62 Mo. App. 1; Hamilton v. Railroad, 80 Mo. App. 597; Live Stock Co. v. Railway, 100 Mo. App. 674; Livery Co. v. Railroad, 113 Mo. App. 144; Summers v. Railroad, 114 Mo. App. 452; Ratliff Bros. v. Railroad, 118 Mo. App. 644; Ward v. Railway, 158 Mo. 226. (3) Under the facts and circumstances of this case, the plaintiff was not required to give notice of any loss accruing to him after the horse was unloaded. Wright v. Railroad, 118 Mo. App. 392.

*J. L. Minnis* and *J. M. Davis & Sons* for respondents.

(1) Plaintiff's cause of action being based upon the alleged negligence of defendant in not furnishing a safe place to unload plaintiff's mare and the evidence

showing that the place furnished to unload was a safe place, he cannot recover for failure to furnish a safe place from whence to remove the mare, after being unloaded, from the premises. He must recover upon the cause of action set out in his petition. Ingwerson v. Railroad, 205 Mo. 335, and cases cited; Spiro v. Transit Co., 102 Mo. App. 250; Garven v. Railway, 100 Mo. App. 617; Fuchs v. St. Louis, 167 Mo. 620. (2) The terms of the contract under which the mare was shipped provided that plaintiff must deliver to the general freight agent of the defendant at his office in St. Louis, within ten days from the time the stock was removed from the car a claim for the loss or damage, in writing, verified by the affidavit of plaintiff or his agent. It was incumbent upon plaintiff to show the delivery of such notice within the time agreed upon or some waiver of it. McBeath v. Railway, 20 Mo. App. 445; Dawson v. Railway, 76 Mo. 514; Brown v. Railway, 18 Mo. App. 568; Rice v. Railway, 22 Mo. App. 321; Smith v. Railway, 112 Mo. App. 610, and cases cited; Bellows v. Railway, 118 Mo. App. 500, and cases cited; Freeman & Hinsen v. Railway, 118 Mo. App. 526, and cases cited. (3) Plaintiff having admitted by his pleadings that the notice required by the contract was not given and having affirmatively proved that no notice to the company was given, and that a compliance with the terms of the contract was not waived, the court properly sustained a demurrer to the evidence.

BROADDUS, P. J. (after stating the facts).—It was the duty of defendant under its contract of shipment to furnish a safe place for the unloading of plaintiff's horses. [McCullough v. Railway, 34 Mo. App. 23; Cooke v. Railway, 57 Mo. App. 471; Kincaid v. Railway, 62 Mo. App. 365; Mason v. Railway, 25 Mo. App. 473; Tracy v. Railroad, 80 Mo. App. 381.] The principle that runs through all the cases is that it is

the duty of the carrier to provide for the safety of animals while being loaded and unloaded. But we understand the defendant does not controvert the proposition that it was its duty to provide a safe place for the unloading of plaintiff's animals, but that it did perform that duty as it was not shown that the platform where they were unloaded was unsafe. As a matter of fact it is conceded by plaintiff that it was not of itself unsafe. As the animal in question was safely unloaded from the car upon the platform and thence to another platform on a level with the ground, and that the mare was injured while being led over a track adjoining, the defendant insists that the evidence did not sustain the allegation of the petition as to that matter and did not show negligence. The allegation of the petition is that the platform where defendant required plaintiff to unload his mare was a dangerous and unsafe place,—not that the platform was dangerous or unsafe but the place was such. And the allegation further is, that, the injury was caused by the foot of the mare being caught on the track adjoining the platform as she was being led away. If there was any obstacle at the platform which prevented the mare from being led away from it in safety after she had been unloaded the place of unloading was unsafe. There was but a few feet, the width of the track, from the platform to the spike that caused the injury. It seems to us that the immediate surroundings of the platform might with propriety be designated as the place of unloading. For instance had there been a deep ditch immediately in front of the platform the place for unloading would be unsafe notwithstanding the platform itself was a safe place.

It seems that the trial court sustained the demurrer to plaintiff's case on the grounds that plaintiff had not complied with the terms of the contract in giving notice of his loss. Such contracts are held to be reasonable and as such are enforced by the courts. [Bel-

lows v. Railway, 118 Mo. App. 500; Smith v. Railway, 112 Mo. App. 610.] While plaintiff admits the validity of the contract as to such notice he contends that under the ruling in Wright v. Railway, 118 Mo. App. 392, such notice was not required because the damage to the animal was received after she left the cars. The contract in that case provided that, no loss or damage to said animals should be allowed unless a written claim be made within ten days. It was held that the contract meant such damage suffered by the animals before they left the cars. And so it was held in Leonard v. Railway, 57 Mo. App. 366. But this contract is materially different from the contracts construed in those two cases. The language here is, "that no claim for damages which may accrue to the party of the second part under this contract shall be allowed . . . unless a claim for such loss or damage shall be made in writing, verified by affidavit . . . and delivered to the general freight agent of the first part at his office in the city of St. Louis within ten days from the time said stock is removed from said cars, etc." A similar contract was construed in Hamilton v. Railway, 80 Mo. App. 597, where the damages claimed was for shrinkage and decline in the market caused by delay in the shipment of certain sheep. It was held that the contract for notice included such damage. In this case the contract provides that no claim for damages which may accrue under the contract shall be allowed without such notice. Notwithstanding the damage occurred after the mare had left the car, it accrued under the contract for transportation, which included a safe unloading.

It appears that plaintiff failed to give any notice of his damage to the general freight agent at St. Louis as he was required to do by his contract. An attempt however was made to show that such notice was given to the general claim agent at St. Louis, by evidence that it had been mailed to him at that place, but plaintiff

farther introduced said claim agent to show that he had received it, but he testified that he had not and that there was nothing in his office to show that it had been so received. Plaintiff would have been justified in resting on the prima-facie case he had made, that notice had been mailed, but this he rebutted by the introduction of the evidence of the agent, there being no other evidence to the contrary except the bare presumption of delivery from the fact of mailing. But however that may be the notice was not directed to the general freight agent as the contract required and therefore unsatisfactory.

And we cannot see that there was any waiver of such notice. The letter written by Smith to plaintiff in the month of July three months after the injury would not of itself constitute a waiver of notice, for several reasons. It was not shown that Smith had any authority to adjust the claim. And it is well settled law that such acts and declarations happening or made after the time prescribed cannot be shown to establish a waiver of the condition of the contract. [Mensing v. Insurance Company, 36 Mo. App. 602; Maddox v. Insurance Co., 39 Mo. App. 198.] This rule was somewhat modified by the holding in Hamilton v. Railroad, supra, to the extent that such acts and declarations might be shown, if they had any tendency to prove an intention to waive the conditions. The letter itself is not in evidence, therefore, we are unable to determine what it tended to prove. When the judgment of the court goes to the right of the plaintiff to recover, all the evidence that is material to the issue must be abstracted for the purpose of review by the appellate court. [Moore v. Harmes, 123 Mo. App. 34; Deering v. Hannah, 93 Mo. App. 618.

Plaintiff insists that under the facts and circumstances in evidence the notice was not required and could not have been given because plaintiff did not and

could not know the extent of the damage to his mare long after the expiration of ten days from the time of her injury. It is said in Harned v. Railway, 51 Mo. App. 482, that, where it takes time to ascertain the extent of damages sustained in such cases, beyond that fixed by the contract when notice shall be given, that a notice given within a reasonable time after such damage is ascertained is a sufficient compliance with the contract. [See, also, Richardson v. Railway, 62 Mo. App. 1.] Admitting that the facts bring the case within the rule that it was impossible for plaintiff to ascertain his damage within the time limited, yet his case is not bettered, because he failed to give such notice at any time. He should have exercised diligence and given the notice within a reasonable time at least.

What has been said disposes of all the material points raised on the appeal. Cause affirmed. All concur.