EMMA M. GOAR et al., Respondent, v. A. G. BELINDER, Appellant.

In the Kansas City Court of Appeals, April 2, 1923.

1. **APPELLATE PRACTICE:** Motion for New Trial: Record Held to Show That There Was no Motion for New Trial Filed, and an Attack upon Judgment for Error, in Matters of Exception, as to the Action of Court Could not be Considered. On appeal, record *held* to show that plaintiff, to meet objections raised in motion for new trial, confessed judgment on defendant's counterclaim, and court set aside former judgment and entered a new judgment thereon, to which there was no motion for new trial filed, and, therefore, defendant was not in a position to attack second judg-

ments for error, in matters of exception, as to the action of the court with respect thereto.

2. ———: Appeals: Though Motion for New Trial be Not Filed After Judgment an Appeal May be Taken, and Any Defects Appearing on Face of Record, Which are Fatal and Not Mere Irregularities, May be Attacked. Even though there be no motion for new trial filed after judgment, an appeal may be taken therefrom, and any defects appearing on the face of the record, which are fatal and not mere irregularities, can be attacked on appeal.

3. TRIAL PRACTICE: Verdict: Responsiveness: Verdict Not Responsive to Issues Ordinarily Fatally Defective. Verdict of jury making no reference to counterclaim, is ordinarily fatal, since it is not responsive to the issues.

4. FRAUD AND DECEIT: Judgment: Estoppel: Confession by Palintiffs of Defendant's Counterclaim for Balance Due on Note after Foreclosure of Chattel Mortgage, Held Not to Estop Plaintiffs from Insisting Upon a Judgment for Damages for Fraud and Deceit. In an action to recover damages 'for fraud and deceit in sale of hotel business, the furniture and fixtures thereof, and for additional furniture placed in the hotel, where plaintiffs confessed judgment in defendant's favor on his counterclaim for balance due on a chattel mortgage, covering the property, after foreclosure, held that confession of judgment was not an admission that defendant's note was valid, and that the sale on which it was obtained was legitimate and not obtained by fraud and deceit, nor were plaintiffs estopped thereby to insist on their judgment for damages for fraud and deceit.

5. ———: False Representations: Expressions of Opinion: False Representations Made by Seller of Hotel Business Held to be Not Mere Expressions of Opinion but Representations of Present and Existing Facts, Sufficient to Support Action for Fraud and Deceit. Where seller of a hotel business made false representations to purchaser thereof, inducing him to buy, which representations were to the effect that the rooms were rented and were then producing certain stated amounts, and that the income from hotel was a certain sum over operating expenses, held not mere expressions of opinion, or statements as to what the hotel would produce in the future, but representations were those concerning present facts then in existence, about which defendant was well informed and of which plaintiffs knew nothing, and sufficient to support action for fraud and deceit.

6. ——— ———: False Representations Held Fraudulent Even Though Defendant Did Not Know Whether They Were False or Not. Where seller falsely represented income of hotel business to purchaser,

for purpose of inducing the purchase thereof, the misrepresentation made under the circumstances, was fraudulent, even though defendant did not know whether it was false or not.

7. ——: ——: Defendant Cannot Escape Liability on Ground That Plaintiffs Should Not Have Relied upon Representations, but Should Have Investigated Truth Thereof. In an action for fraud in selling hotel business where defendant made false representations as to the income thereof, he cannot escape liability on the ground that plaintiffs should not have relied upon what he told them, but should have made a more thorough investigation.

8. ——: ——: Evidence of Fraudulent Representations in Sale of Business Held Sufficient for Submission to Jury: Evidence of false representations in sale of hotel business, as to what rooms thereof were then rented, and as to the income the hotel was producing, held sufficient to make the case one for the jury.

9. PLEADING: Attack Made on Petition after Verdict Too Late Unless it Wholly Fails to State Any Cause of Action Whatever. Where there was no attack made on petition in trial court, after verdict is rendered it is too late to do so, unless it wholly fails to state any cause of action whatever.

10. FRAUD: Deceit: Action to Recover Damages for Fraud, Filed Two Months after Loss Caused Thereby, Held Not Filed Too Late, and That Defendant Could Not Have Been Prejudiced Thereby. In a suit for damages for fraud in a contract which plaintiffs could have affirmed, but sued for the loss caused by the fraud within two months after defendant took possession of property and sold it to another party, held plaintiffs lost no rights by delay, and defendant could not have been prejudiced thereby.

11. APPEAL AND ERROR: Judgment: Imperfection: An Imperfection in a Judgment Not Materially Affecting Merits of Action, Nor Rights of Parties, is Not Ground for Reversal. Under section 1513, Revised Statutes 1919, an imperfection in a judgment which does not materially affect the merits of the action, nor the rights of the parties, is not ground for reversal.

12. ——: ——: Appellate Court Can Correct or Modify Imperfections of Judgment Where the Same do Not Materially Affect Merits, Nor the Rights of the Parties, or it May Remand Case with Directions to Trial Court to Correct Judgment. Under section 1514, Revised Statutes 1919, appellate court can correct or modify imperfections in a judgment which do not materially affect merits of the action, nor rights of parties, or may remand the case with directions to trial court to correct the judgment.

Appeal from the Circuit Court of Jackson County.—*Hon. O. A. Lucas*, Judge.

AFFIRMED AND CASE REMANDED (*with directions*).

*Sharp & Sharp* and *E. E. Aleshire* for respondents.

*William C. Forsee* and *G. W. Duvall* for appellant.

TRIMBLE, P. J.—Defendant was operating a hotel in a building which he owned. On February 26, 1920, plaintiffs purchased the furniture and hotel business at an agreed price of $3500 (of which $1000 was paid in cash), and also put into the hotel $431.65 worth of additional furniture, expended various sums for improvements, paid defendant $63 for groceries then on hand, and deposited $25 as a security for electic lights. They then gave a chattel mortgage on the whole to secure the remaining $2500 of the purchase price, to be paid in installments of $50 per month, the first installment falling due March 25, 1920. (From the manner in which defendant proceeded, we assume that a default in the payment of any installment must have made the whole debt due and authorized a foreclosure of the mortgage though the record does not affirmatively so show.) They then took a ten year lease on the building at a rental of $150 per month, paying the first month's rent in cash.

Plaintiffs took charge of and began running the hotel, but, the business being nothing like defendant had represented it to be, they found on or about March 22nd that they would have to raise additional money to carry on the business and meet their first installment, due on March 25th. Consequently they left the hotel in charge of Mrs. Goar's mother and one Ferguson, a young man who boarded there, the latter to actively manage the hotel for them while they went to Oklahoma in the hope of getting additional money from the same source Mrs. Goar had theretofore raised the $1000.

During their absence and on the same day they left, defendant came to the hotel and on the 23rd or 24th of

March he was there and later told Ferguson he had a chattel mortgage on the hotel which would fall due on the 25th and he was going to take charge of the hotel if the plaintiff's didn't have the money due on the installment and they would have to pay for the place before they got it back. Ferguson says that early on the morning on March 25th, defendant took charge of the hotel, began waiting on the table and buying groceries therefor and told Ferguson that all the money the latter had taken in was coming to him and Ferguson paid to him all that he took in less what he had paid out for · expenses.

In a day or so after March 26, 1920, plaintiffs returned to Kansas City, having been unsuccessful in their quest for money, and found that defendant had sold the hotel and that it was in the purchaser's, Bicknell's, hands. Not being able to get in touch with defendant although several attempts were made to do so, they brought this suit in two counts, the first for $1869.65, the aggregate of their damages, on the ground of defendant's fraud and deceit in the sale of the hotel business to plaintiffs, and the second to recover $431.65, the value of the additional furniture they had put into the building. Said second count for conversion being on the ground that defendant, prematurely and before he had any right so to do, had wrongfully seized the property and thereafter foreclosed the chattel mortgage and had thereby converted the property to his own use.

In his answer, defendant met each count with a general denial and then set up, as a counterclaim, his demand for $277.50 as the balance due on the $2500 note after proceeds of the foreclosure of the chattel mortgage had been applied thereon. Plaintiff's reply thereto was a general denial.

At the March term, 1922, the case was tried and the jury found for "plainti*ff*" and assessed "*their* damages" at $1438 on the first count, and then found for defendant on the second count. On this verdict the court rendered judgment for plainti*ff*s, on their first count, in the sum of $1438, and for defendant on the second count.

At the next or May term, 1922, the record recited that "plaintiff confesses judgment in favor of defendant on defendant's counterclaim" for $277.50, whereupon the court set aside the former judgment rendered at the March term and entered judgment for defendant on his counterclaim for $277.50 and then rendered judgment for plaintiff on the first count for $1438 less $277.50, namely, $1160.50 .

The defendant thereupon appealed. Plaintiffs, in addition to their brief on the merits, have filed a motion to dismiss the appeal or affirm the judgment. Certain grounds of this motion are untenable, namely, that the record proper does not show any appeal was allowed, nor that any bill of exceptions was signed, filed or made a part of the record. We think that the record proper does disclose each and every one of these things.

The ground that the record proper does not show the time when the motion for a new trial was filed nor that one was ever filed, calls for a somewhat extended notice. We may remark here that if the parties in this case had deliberately set out with the intention of tangling up and hopelessly confusing the record and of presenting it to us in such a shape that a satisfactory conclusion can with difficulty be reached, they would not have succeeded any better than they have. Although the $431.65 alleged loss on account of furniture added to the hotel is included in the damages sued for in the first count, nevertheless a second count was added seeking to recover the same loss as for conversion. There are two plaintiffs in the case, yet the jury's verdict is for plaintiff, assessing *their* damages at the amount heretofore stated. The judgment thereon is for plaintiff*s,* while at the next term it seems that plaintiff comes in and confesses judgment on the defendant's counterclaim, which the jury's verdict had not mentioned, and thereupon the former judgment was set aside, judgment was rendered against "the plaintiff" on defendant's counterclaim for $277.50 and then judgment was entered for "the plaintiff" and against the defendant for $1438 less $277.50, to-wit, $1160.50. In addition to all this, the abstract of the record does not show that any motion for

new trial or in arrest was filed as to the first judgment, nor does it affirmatively state the filing of any motion for new trial or in arrest. It is true that immediately following, and apparently as a part of the entry embodying the second judgment, the record reads: "Thereafter on the same day defendant's motion for a new trial is by the court taken up, heard and fully considered and the same is by the court overruled," etc. The short form transcript certified to by the clerk showing both judgments show matters to be in the same situation as hereinabove stated. Neither the abstract of the record proper nor the short form transcript makes reference to more than one motion for new trial, nor do they mention but one motion in arrest.

What motion for new trial is meant or referred to in the record which says, "Thereafter *on the same day*" the defendant's motion for new trial is overruled? If, it refers to a motion to set aside the second judgment, necessarily it must have been filed or the court would not have acted upon it; and, since that action was had on the day the judgment was rendered, necessarily it was filed within the required statutory period. But it may refer to a motion directed against the first judgment. If so, then there is nothing in the record proper affirmatively stating that it was filed at the former term and within the statutory four days after judgment. It is well settled that the record should show this. [Harding v. Bedoll, 202 Mo. 625.] It would seem, however, that plaintiffs' action in coming into court at the next term, confessing judgment on defendant's counterclaim, having the court to render judgment thereon, to set aside the former judgment for plaintiffs and then to render judgment for plaintiffs for the amount of the former judgment less the amount of the judgment on the counterclaim, is necessarily an implied admission that there was a motion for new trial filed in proper time after the first judgment, else there was nothing to carry said first judgment over to the next term where it could be acted upon as the plaintiffs had the court to do. It would seem that what the court did at the May term was an attempt to

correct as far as it could, the first judgment so as to meet objections raised in the motion for new trial filed against it, and the court, having done what it could in that regard, overruled the said motion. This would leave the defendant without any motion for new trial filed against the second judgment, and, therefore, not in a position to attack it for error, *in matters of exceptions*, as to what the court then did. In this appeal, defendant attacks alleged errors in the trial and verdict, which of course are the basis of the first as well as of the second judgment, and he also attacks alleged errors on the face of the records in the second judgment. His appeal is from the second judgment and although he has not shown any motion for new trial as to it, nevertheless, as to any defects appearing *on the face of the record* of the second judgment, which are fatal and not mere irregularities, he can attack them. For as to such, an appeal can be had without a motion. [Newton v. St. Louis, etc., R. Co., 168 Mo. App. 199, 202.]

In view of the foregoing circumstances we are not willing to sustain respondents' motion to affirm the judgment or dismiss the appeal on the state of the record, but will consider alleged errors relative to the trial and alleged fatal errors which appear on the face of the record proper as to the second judgment. The record is indeed anomalous, being unlike anything "ever before seen on land or sea" and therefore parties should not be surprised at the case being disposed of in a way which, while it may seem unusual, nevertheless meets the situation in a practical way.

The verdict of the jury made no reference to the counterclaim and ordinarily such a verdict is fatal since it is not responsive to the issues. In one view it, however, might seem that the finding of the jury that the sale was fraudulently made, in effect logically disposed of the defendant's claim that the balance on the note for the purchase money was due. The sale of the hotel to plaintiffs, the payment of the $1000 and the execution of the $2500 note secured by mortgage were really parts

213 M. A.—22

of one and the same transaction, and when the jury found the sale was fraudulent, it would seem that defendant should not recover of plaintiffs any balance on a note thus fraudulently obtained, especially when plaintiffs and also defendant are in precisely the same situation as though the sale were rescinded. But be this as it may, the verdict should have disposed of and not ignored the counterclaim. However, at the May term, the plaintiffs came into open court and confessed judgment in defendant's favor on his counterclaim. It would seem that defendant is hardly in a position to complain of what was done on this occasion since the effect of it was to *reduce* the judgment against him to the extent of $277.50. But defendant urges that this confession of judgment is a solemn admission that defendant's note is valid and that therefore the sale on which it was obtained was legitimate and not obtained by fraud and deceit, and consequently plaintiffs are estopped to insist on their judgment for damages for fraud and deceit. If this be so, it is a contradictory position appearing on the face of the judgment which destroys it and estops plaintiffs from recovering anything. We do not think it conclusively does so. Plaintiffs did not have to rescind in order to sue for damages for the fraud. They could have *affirmed* the sale and yet sued for damages on account of the deceit. The fact that they are willing to pay the balance on the note and lose that in addition to what they have already lost, except that which they have recovered, is not a conclusive admission that they were not deceived. If they choose to go on and pay the balance of the note, after getting judgment for the property they theretofore had put into it, it is their affair and not a matter of which defendant can complain. Consequently, we do not think the second judgment entry is a "destroyer of itself" nor does it conclusively estop plaintiffs from asserting their right to such loss as they have sued for on account of the deceit. Besides, the action of the plaintiffs at the May term may be considered as an awkward attempt to enter a remittitur whereby the omission in the verdict to refer to the counterclaim might be cured. That, in fact, is the result.

We cannot uphold the claim that the petition did not state a cause of action for the reason that representations as to value or as to what a property will produce, are not actionable. It is true that, ordinarily, statements as to value and as to what a property will produce in the future, are not actionable, being mere expressions of opinion. But the representations were that the rooms were rented and were then producing certain stated amounts and that the income from the hotel was a certain sum, and these representations were those concerning a present fact. They were not the expressions of opinion but the positive statement of facts then in existence, about which defendant was well informed and of which plaintiffs knew nothing. Under the circumstances here disclosed, we think the representation that the rooms were rented for such and such prices and that the hotal income from the hotel was $400 or $500 per month, which after deducting expenses left a net sum of $100 to $150 per month, when none of these statements were true, form a basis of an action for fraud· and deceit. [Cahn v. Reid, 18 Mo.· App. 115, 130.] The parties were not upon an equal footing. The representation as to the rent the rooms were producing and the monthly income of the hotel and its excess over the expense of running the same were not ex pressions of opinion, nor statements as to what the hotel would do in the future, but were representations of present facts, and made furthermore to induce plaintiffs to buy. Plaintiffs sought to see the books, but the one they were shown was one the defendant had and kept for his own private purposes. Manifestly, defendant knew the truth concerning the matters which he represented, but. a misrepresentation made under these circumstances is fraudulent even though defendant did not know whether it was false or not. [Ruddy v. Gunby, 180 S. W. 1043, 1045; Devero v. Sparks, 189 Mo. App. 500.] Nor will it lie in the mouth of the defendant to urge that he escape liability on the ground that plaintiffs should not have relied upon what he told them but should have made a more thorough investigation. [Flack v. Wahl, 193 S. W. 56;

Rabenau v. Harrell, 278 Mo. 247; Laird v. Keithley, 201 S. W. 1138, 1143.]  There was ample evidence from which the jury could find there was fraudulent representations. [Brownlow v. Wollard, 61 Mo. App. 124; Dunn v. White, 63 Mo. 181.]  If there is any evidence to show fraud, the case cannot be taken from the jury; and the evidence as to the representations of what the rooms were then rented for is alone sufficient to make the case one for the jury, and of course that representation enters into and taints all the other representations as to the income the hotel was producing.

There was no attack made on the petition in the trial court, and after verdict it is too late to do so unless it wholly fails to state any cause of action whatever.  It is manifest, however, that the petition is sufficient.  [Meier v. Buchter, 197 Mo. 69, 91; Meserli v. Bantrup, 216 S. W. 825, 826.]

It is urged that plaintiffs should have acted sooner. This proceeds upon the theory that the case is necessarily one of rescission, when, as we have seen, it is not necessarily based on rescission, but is a suit for damages for fraud in a contract which plaintiffs could have affirmed and yet sued for the loss caused by the fraud.  But even upon the theory of rescission, we cannot see how plaintiffs lost any rights by delay or how defendant was prejudiced.  He was at the hotel before the 25th of March, and early on the morning of that day he took charge, when plaintiffs had all of that day in which to meet the installment when falling due.  There was no opportunity for plaintiffs at any time thereafter to operate the hotel, for defendant took charge of it and within a very few days sold it to another party.  The suit was filed June 1, 1920, and was not one for rescission but merely for damages for the fraud.  This could be done. [Morgan, etc., Coal Co. v. Halderman, 254 Mo. 596, 649.] Defendant's rights have not been changed in any way, unless indeed they have been *improved* by the fact of his getting judgment for the deficiency on the note given for the balance of the purchase price.

The verdict shows quite clearly that it was for both the plaintiffs as it assessed *"their"* damages thus showing that the leaving of the letter "s" off the word "plaintiff" was a mere typographical omission. The plaintiffs are husband and wife, and the fact that the property advanced and put into the hotel belonged almost entirely to the wife may account for the new judgment being rendered for plainti*ff* instead of for plainti*ff*s. It would seem that if defendant has to pay the judgment, he could obviate all danger of any uncertainty in this regard by paying it into the clerk's hands and obtaining a release, leaving it to the plaintiffs to divide it properly among themselves. Such an imperfection is not ground for reversal, since it does not materially affect the merits of the action nor the rights of the parties. [Sec. 1513, R. S. 1919.] However, this court can, under section 1514, Revised Statutes 1919, correct or modify said judgment so as to make it read plaintiffs instead of plaintiff. [Pettingill v. Jones, 30 Mo. App. 280, 284. See, also, Dixon v. Hunter, 204 Mo. 382, 392-393.] Or the same can be done by remanding the case with directions to the trial court to correct the judgment in that respect.

A number of complaints or points are made, being matters of exception, but, as they are not contained or preserved in the motion for new trial, they cannot be reviewed here.

The judgment of the trial court rendered at the May term, 1922, is affirmed, but the case is remanded with directions to correct the entry of said judgment so as to made it read "plaintiffs" instead of "plaintiff" wherever that word occurs. All concur.