S. S. ORLANN, Appellant, v. VICTOR LAEDERICH, MARIE LAEDERICH and A. L. MORGAN.—92 S. W. (2d) 190.

Division Two, March 21, 1936.

784

*C. W. Prince, James N. Beery* and *Walter A. Raymond* for appellant,

*Clarence I. Spellman* for respondents.

BOHLING, C.—Mrs. S. S. Orlann instituted suit against W. W. Barrett for the recovery of damages for fraud and deceit alleged to have been perpetrated in a transaction involving the sale and purchase of a leasehold estate. Thereafter, Victor Laederich, Marie Laederich, his wife, and A. L. Morgan were joined as parties defendant. Plaintiff, at the beginning of the trial, dismissed as to defendant Barrett. The court overruled plaintiff's motion to set aside

an involuntary nonsuit, taken with leave at the close of plaintiff's evidence, and plaintiff appeals from the judgment entered in favor of defendants.

The case involves the transfers from Victor H. Laederich and Marie Laederich to W. W. Barrett and from W. W. Barrett to S. S. Orlann of a 99-year lease, providing for an annual ground rental of $7,200 and bearing date of January 1, 1914, on premises occupied by what is known as the Delmain building, Ninth and Main streets, Kansas City, Missouri. Mrs. Orlann is crippled and Mrs. G. S. Shore, her mother, acted as her agent in the negotiations leading up to her acquisition of the lease. All the parties involved in the transaction lived in Kansas City with the exception of Barrett, who was a banker of Sedalia, Missouri. Defendant Morgan was a part-time employee (clerk) of Laederich, and had a desk in the same office. The Laederichs acquired the lease in September, 1923. Thereafter, the Laederichs and Barrett agreed upon a trade for the lease. Laederich secured Charles K. Blender, of San Francisco, California, to act as "straw man" for him, and at Barrett's request, Morgan secured Edna L. Nelson, with whom Barrett was not acquainted, to act as "straw party" for Barrett. Miss Nelson and Laederich were not acquainted. The Laederichs, under date of March 24, 1924, assigned the lease to Miss Nelson in consideration of the transfer of two farms, aggregating 630 acres, in Pettis County, Missouri (subject to $40,000 indebtedness, secured by deeds of trust thereon), and a $70,000 indebtedness, evidenced by a note secured by a mortgage back on said leasehold estate. According to Morgan, under Barrett's instructions five notes aggregating $40,000, payable to the order of Charles K. Blender, and secured by a second mortgage on said leasehold, were executed by Nelson. This $40,000 transaction was no part of the trade between the Laederichs and Barrett, but was just "plastered on." The title to the Pettis County farms was not in Barrett, but the farms were conveyed to the Laederichs by the parties holding the record title. Charles K. Blender endorsed the $70,000 note and it was delivered to Mr. Laederich. He also endorsed the notes evidencing the $40,000, and these were delivered to Barrett. After acquiring the lease, Barrett paid Morgan $75 monthly to collect the rents and manage the building.

Reading an advertisement of Mr. Vogrin, a real estate agent of Kansas City, Mrs. Shore called on him. Vogrin showed her through the Delmain building, which she examined. She liked it. Vogrin told her all about the rents that were being received, and acted as agent for Barrett and for plaintiff, receiving, on behalf of plaintiff, a commission for his services. Vogrin showed her a statement purporting to set forth the income from and expenses of the Delmain building, which, however, he retained. She secured a duplicate of the statement from a Mr. Lentell, another realtor, made up, accord-

ing to Lentell, from information obtained from Mr. Laederich, who had listed the property with him. Vogrin had referred Mrs. Shore to Laederich, and sometime in May, 1924, Mrs. Shore called at Laederich's office and had her only conversation with defendants Messrs. Laederich and Morgan. This conversation is the foundation of plaintiff's suit. Plaintiff's narrative of her testimony with reference thereto, reads: ". . . I found two gentlemen in the office and I asked for Mr. Laederich and Mr. Laederich got up from the chair and I told him I was Mrs. Shore and Mr. Laederich introduced me to Mr. Morgan, who was in the same office by another desk, and I asked Mr. Laederich if he is the owner of the mortgage on the 99-year lease on the Delmain building. He said, no; he wasn't the owner of the mortgage, that the owner of the mortgage is Mr. Blender. . . . And that he handles the mortgage for Mr. Blender and takes care of his business. I asked him if he is acquainted with the expenses and income on the Delmain building. He told me, yes; that Mr. Morgan collects the rents and that they have got the books in the office and he knows all expenses and the income." She showed Mr. Laederich the statement she secured from Mr. Lentell. This statement, after stating that the building was rented to good tenants under leases, except the third floor which was then vacant, read:

| | | |
|---|---|---|
| "The annual rental is | | $21,600.00 |
| "Expenses: | | |
| "Ground rental | $7,200.00 | |
| "Janitors and help | 1,620.00 | |
| "City heat | 1,200.00 | |
| "Light and water | 240.00 | |
| "Insurance | 84.00 | |
| "Taxes | 2,100.00 | 12,444.00 |
| | "Net | $9,156.00 |

"There is net a first mortgage of $70,000 at 7%, payable $4,000 per year for four years then $5,000 per year for four years and the balance in nine years. Owner will trade lease and improvements for good clear land. W. J. Lentell."

The witness testified that Laederich looked over the statement and took out of his desk other statements which looked just like it; and, after comparing them, said "The statement is all right with the exception that your statement calls for $4,000 payment on the mortgage and we decided that we're going to collect $3,000 on the mortgages, four payments or five, and then will commence $5,000 payments; and he also made a remark as to the expenses on that statement, light and water, and he said 'that includes power also.'" Mr. Morgan looked over the statement and said "The statement is correct." Plaintiff's narrative of the testimony continues: "I asked

Mr. Laederich what he thought the property was worth. He made no reply, but asked Mr. Morgan at the next desk for his valuation of the property. Mr. Morgan said $145,000. Then Mr. Laederich said the building was worth 'at least $145,000.' I asked Mr. Laederich if the building was sold for that price and he said the bankers in Sedalia paid $35,000.00. After some figuring Mr. Laederich said the bankers paid $35,000.00 in cash; $70,000 first mortgage and $40,000 second mortgage, which added up to $145,000. I told Mr. Laederich the building will have to take care of itself and leave a little net income because my daughter is a crippled woman and . . . I am afraid she can't put in any money from any source and she wouldn't be able to carry it. Mr. Laederich said it will do all of that, and it would carry itself and also leave a little net income.'' Witness informed Laederich that Vogrin had not told her of the $40,000 second mortgage, and plaintiff's narrative states: ''. . . Mr. Laederich said the $40,000 was paid with the exception of a few hundred dollars which is in some dispute, but he believed that would be straightened out all right and then the second mortgage would be released. . . . Mr. Morgan told me if I made a deal on this Delmain building, he believed I would be making a good deal.'' Laederich also informed Mrs. Shore the interest would amount to $4,900.00, which, with the $3,000 payment, would amount to $7,900; and that he then deducted the $7,900 from the $9,156, and it left a net income of $1,256.

According to the testimony, when the Laederich-Barrett deal was closed, Barrett owed several hundred dollars taxes on the farms. To secure this, Miss Nelson, with the approval of Barrett, executed an assignment in blank, which was delivered to Morgan, said assignment being acknowledged on July 22, 1924, and held by Morgan, while he was collecting the rents for Barrett, until some time in October or November when it was delivered to plaintiff.

Mrs. Shore testified she made no investigation of the facts embraced in the statements of Messrs. Laederich and Morgan, but, relying on their representations, the lease was ultimately purchased for Mrs. Orlann subject to the $70,000 first mortgage. She never met Barrett until about thirty minutes before closing the deal. Barrett's abstract was continued down to October 8, 1924, and the assignment of the lease to Mrs. Orlann was recorded November 17, 1924. The $40,000 in notes were delivered to plaintiff and that mortgage released of record. Mrs. Shore considered the transaction an important one, and it took some four or five months after her interview with defendants Laederich and Morgan to close it.

Plaintiff's evidence established that the leasehold had little or no equity above the $70,000 indebtedness secured by the first deed of trust.

With reference to the net income, defendant Morgan testified that the disbursements just about equaled the income. Plaintiff offered to prove that annual expenses for painting, decorating and various kinds of supplies necessary in the operation of the Delmain building amounted to $2,000, which, when added to the items on the statement and installments and interest under the $70,000 indebtedness, would result in a deficit.

A number of the allegations of fraud set forth in the petition, which is in one count, are not material to this review as plaintiff makes no contention she acted in reliance thereon, nor are they urged as grounds for reversing and remanding the cause. Thus restricted, plaintiff's petition, in substance, charged fraud and deceit in that a conspiracy existed on the part of Barrett and the defendants (the Laederichs and Morgan) to defraud in the excution of the aforesaid purported sale or exchange of said leasehold by the Laederichs to Barrett; that Barrett (or Miss Nelson, who acted as straw party for Barrett) had never been the owner of the leasehold; that the $70,000 and $40,000 indebtedness, secured by first and second deeds of trust, respectively, on the leasehold were not genuine, but had been executed for the purpose of giving a false appearance of value to the leasehold; and that the value of the leasehold, the price paid for the leasehold by Barrett, and the net annual income from the leasehold was misrepresented by defendants to plaintiff.

Defendants contend that this court is in no position to pass on the issue of the sufficiency of the evidence to make a submissible case for the reason plaintiff has not presented all the evidence as given at the trial but only her version of what a portion of the evidence shows. Plaintiff's abstract sets forth a large portion of the evidence in narrative form. The rule, where an appellant contends a respondent did not make a submissible case, that the entire evidence must be set out on appeal [McCarroll v. Kansas City, 64 Mo. 283, 286; Crohn v. Modern W. of Am., 145 Mo. App. 158, 162, 129 S. W. 1069, 1070; Deering & Co. v. Hannah, 93 Mo. App. 618, 67 S. W. 714; Gooden v. Modern W. of Am., 194 Mo. App. 666, 675, 189 S. W. 394, 397(8)] is not to be interpreted so as to preclude an appellant from setting forth the evidence in narrative form [Sessinghaus Mil. Co. v. Hanebrink, 247 Mo. 212, 217, 152 S. W. 354, 355(1); Vandeventer v. Goss, 190 Mo. 239, 245, 88 S. W. 610, 611; Letts v. Wabash Railroad Co., 131 Mo. App. 270, 281, 111 S. W. 138, 141] when the substance of all the evidence is in the narrative of the witnesses [Euler v. State Highway Comm., 227 Mo. App. 755, 759, 55 S. W. (2d) 719, 722].

An appellant's printed abstract should set forth so much of the evidence as is necessary to a complete understanding of the specific issues presented and determinative therefrom, either by questions and

answers or in narrative form. This is not a case where an appealing defendant contends plaintiff failed to make a submissible case. Here plaintiff appeals. If the evidence presented by plaintiff establishes a submissible case, the issue should be ruled accordingly; unless, of course, defendants make a showing that such evidence be not correctly stated in plaintiff's printed abstract.

In considering the action of the trial court in overruling plaintiff's motion to set aside the involuntary nonsuit, taken with leave, plaintiff is entitled to have the facts adduced in evidence, together with all reasonable inferences therefrom (not, however, forced or violent inferences [Williams v. Kansas City So. Ry. Co., 257 Mo. 87, 112, 165 S. W. 788, 794(1)]), taken as true [Randol v. Kline's Inc., 322 Mo. 746, 757(1), 18 S. W. (2d) 500, 505(1)].

The uncontradicted testimony of defendants Victor Laederich and A. L. Morgan, appearing from their depositions offered on behalf of plaintiff, established the exchange of the leasehold by the Laederichs to Barrett in consideration for the equity of said Barrett in two Pettis County farms (subject to an indebtedness of $40,000, secured by deeds of trust on said farms) and $70,000, evidenced by a note secured by a first deed of trust on said leasehold. Plaintiff is bound by this testimony and may not successfully invite this court to disregard it [Green v. Western Union Tel. Co. (Mo. App.), 58 S. W. (2d) 772, 773(4); McLain v. Atlas Assurance Co. (Mo. App.), 67 S. W. (2d) 849, 853(5) and cases cited; Polkowski v. St. Louis Public Service Co. (Mo. App.), 68 S. W. (2d) 884, 888(5) and cases cited], or predicate a conspiracy to defraud on that portion of said transaction between the Laederichs and Barrett standing unimpeached in this record. Mr. Laederich foreclosed the $70,000 deed of trust July 28, 1927. It also follows that there was no substantial evidence to support plaintiff's charge that this foreclosure was a part of the alleged original conspiracy, and that the transactions between plaintiff and defendants in connection with the foreclosure had no causal connection with the alleged fraud leading to the purchase of the leasehold by plaintiff. This failure on the part of plaintiff to prove a conspiracy is not destructive of the alleged cause of action. The essence of plaintiff's cause of action was fraud. Any one or more of several persons participating in the perpetration of an actionable fraud becomes a fraud-feasor, and, irrespective of proof of a concert of action on the part of some or all, is liable [Becker v. Thompson, 336 Mo. 27, 76 S. W. (2d) 357, 361(3), and cases cited] if the party defrauded is in a position to maintain the action for the fraud alleged.

It is well recognized that fraud is not presumed, but must be proved, and the burden rests upon the party charging the fraud.

"As a postulate to a discussion of the charge of fraud," McCaw v. O'Malley, 298 Mo. 401, 413, 249 S. W. 41, 44(2) states: "we may observe that in an action for false representations, the burden is upon the plaintiff (defendant herein) to establish by proof that there was not only a false representation, but that he relied upon it, and that such reliance 'was an act of ordinary prudence,' and that such representations thus prudently relied upon influenced plaintiff to his damage. . . ."

"It follows from the foregoing that—

" 'Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.' . . .

"Where the vendee knows the facts, or may know them by the exercise of ordinary prudence, he must form his own opinions and act on his own judgment. . . .

"Neither law nor equity will afford relief on the ground of false representation to one with equal means of information, who fails to resort to such means. . . ."

The propositions announced in McCaw v. O'Malley, supra, are supported by citations of authority, which may be consulted with profit. [See also Maupin v. Provident Life & Accident Ins. Co. (Mo. App.), 75 S. W. (2d) 593, 595(3-6).]

A failure to establish any one of the essential elements of fraud is fatal to a recovery. [Dillon v. Hill (Mo.), 178 S. W. 85, 86(1).]

Slaughter's Admr. v. Gerson, 13 Wall. (80 U. S.) 379, 383, 385, 20 L. Ed. 627, 628, 629, states: "A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. . . . If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and has been misled by overconfidence in the statements of another." (And l. c. 385:) "Where the means of information are at hand and equally open to both parties, and no concealment is made or attempted, the language of the cases is, that the misrepresentation furnishes no ground for a court of equity to refuse to enforce the contract of the parties. The neglect of the purchaser to avail himself, in all such cases, of the means of information, whether attributable to his indolence or credulity, takes from him all just claim for relief." See also Conklin v. Missouri Pac.

Railroad Co., 331 Mo. 734, 738, 55 S. W. (2d) 306, 308 (this court en banc stating, that while it has gone a long way in its efforts to protect . . . " 'the foolishly credulous; as against the machinations of the designedly wicked,' . . . we have never lost sight of the principle that the courts will not protect those who, with full opportunity to do so, will not proect themselves . . . ); Brennecke v. Ganahl Lumber Co., 329 Mo. 341, 350, 44 S. W. (2d) 627, 631(2) (stating: "In view of respondent's duty, under all the circumstances, to give reasonable attention to the protection of his own interests, we do not think that the false representations which he says the claim agent made can be said to have been such as were reasonably calculated to induce him to forego inquiry and investigation and rely wholly and solely upon the statements of a man whom he did not know and had never seen before that day''); Bragg v. Kirksville Packing Co., 205 Mo. App. 600, 604, 226 S. W. 1012, 1014, (stating:. "A vital part of a case of this nature is to show that plaintiff was fraudulently imposed upon; that he was led astray, knew no better and had no means of informing himself''); Cornwall v. McFarland Real Estate Co., 150 Mo. 377, 383, 384, 51 S. W. 736, 738 (stating: The evidence "showed the property was open to observation and that he [plaintiff] either knew, or might have known, both its money and rental value." . . . "Moreover, plaintiff could have made personal examination of the property covered by the mortgage had he desired to do so, and thus formed his own judgment as to its value, and also have learned whether it was rented or not. Nothing was done by defendant to prevent him from so doing, and, if he chose to rely upon defendant's representations with respect to its cash and rental value rather than do so, it was his own fault''); Higgins v. American Car Co., 324 Mo. 189, 194, 22 S. W. (2d) 1043, 1044; Morgan County Coal Co. v. Halderman, 254 Mo. 596, 645 et seq., 163 S. W. 828, 842.

As we read the evidence and offers of proof, the Laederichs did not profit by reason of the Barnett-Orlann transaction. The affirmative evidence is that Mr. Laederich received nothing therefrom; that it was never discussed between Barrett and Mr. Laederich; that Mr. Laederich knew nothing of the assignment of the lease to Mrs. Orlann at the time it was made, and that Morgan's remuneration as rental agent for Barrett ceased. Mrs. Laederich did not become acquainted with plaintiff or Mrs. Shore until months after the transaction. Neither Barrett nor any of the defendants pressed the purchase of the leasehold upon plaintiff.

Plaintiff was represented by Mrs. Shore, her mother, and Mr. Vogrin, a Kansas City real estate agent. Plaintiff did not charge or attempt to prove misconduct on the part of her agent Vogrin. (It is somewhat unusual, under the circumstances of this case, that neither plaintiff, although present in court, nor her agent Vogrin

testified.) Plaintiff's cause of action is based on the one conversation had by Mrs. Shore with Victor Laederich and A. L. Morgan, whom Mrs. Shore sought out for information. Mrs. Shore testified she never owned and was not familiar with the expenses incidental to the operation of an office building; that she considered the transaction a "big deal;" that it was four or five months after said conversation before it was closed and during that time she never saw them concerning the transaction; and that she never saw Mr. Barrett until about thirty minutes before closing the deal. Plaintiff, Mrs. Shore and Mr. Vogrin were *sui juris*. Neither was illiterate or mentally incompetent. Plaintiff and Mrs. Shore were strangers to defendants. There was no fiduciary relation existing between them, and nothing to inspire confidence in defendants or to disarm plaintiff or her agents from giving attention to the business to be transacted. During the four or five months the transaction was pending no fraudulent devices were practiced by defendants upon plaintiff or her agents to cause them to refrain from making any inquiry or any investigation they might desire. The building was available for inspection. Plaintiff's agent Vogrin, a real estate agent of Kansas City, must be considered competent to place a valuation upon the building. His services were paid for and available to plaintiff. He owed her good faith, and so far as this record discloses he was not derelict in his trust. Mrs. Shore was in touch with him throughout the negotiations. Yet, this record is silent as to any inquiry by plaintiff or Mrs. Shore of their agent Vogrin as to the value or possible expenses connected with the operation of the building. Vogrin was as competent to place a value on the leasehold as Victor Leaderich, a trader, or Mr. Morgan, a clerk and rental agent. Mrs. Shore often in her testimony did not distinguish between property owned by her and that owned by plaintiff. She speaks of the Delmain leasehold as though she either owned or had an interest in it in portions of her testimony. From the evidence, Mrs. Shore and plaintiff, or Mrs. Shore or plaintiff, owned considerable real estate (some located in Kansas City) of a value of approximately $400,000, consisting of residences, apartments, store buildings, a family hotel of one hundred rooms, and farm lands. They were not wholly ignorant of values of real estate in Kansas City or of the means of ascertaining facts affecting such value. The uncontroverted evidence establishes that the charges for water, light, heat and power service for the building were available upon inquiry from the utility. No investigation was made or undertaken as to these or any other expenses connected with the operation of the building. Mrs. Shore made no inquiry concerning any payments for janitors and help, insurance or taxes. She did not request of defendant Morgan an inspection of such records as he had covering the rentals derived from or disbursements on behalf of the building. She did not inform defendants that upon the

strength of her interview with them plaintiff would purchase the leasehold, nor could she well have done so in view of her testimony that she had to "consult her folks" during the negotiations subsequent to the interview. If she considered it a "big deal," as she testified, we are at a loss to understand what legal justification existed for placing the continued implicit reliance here sought to be shown in statements made to her by total strangers upon their first meeting. She never once returned to interview defendants or request of them a verification, in any manner, of the statements she attributes to them. As we view the record plaintiff and her agents did not rely upon the representations testified to; or, if they did, such reliance was the result of indolence and inattention to the matter in hand; and plaintiff may not recover.

Plaintiff urges the tendency of modern decisions to condemn the falsehood of the fraud-feasor rather than the credulity of his victim. The facts in this case distinguish it from the cases wherein such a tendency has been manifested. The action sounds in tort. Parties, *sui juris*, in full possession of their faculties and unrestrained in their action, when about to enter upon a business transaction should not look to the law or the courts as a child does to its parent or a ward to its guardian. The exercise of common sense, self-reliance, and ordinary diligence and prudence is to be expected in such transactions between adults, and indolence, listlessness, indifference and unwarranted credulity should not be encouraged. Common experience teaches us one looks with favor upon his own property; that a desire for gain prompts trading; and that attention to business and inquiry before (rather than after) a trade affords the more certain protection. While one desiring to dispose of property may be under a temptation to make misrepresentations in respect thereto, one who finds on inquiry that he cannot avoid his contract, entered into foolishly or on his mistaken judgment, other than by proof of misrepresentation by the other is subject to the same activating temptation. Courts of justice are not warranted in assuming under any and all circumstances that a litigant asserting fraud (having the burden of proof) is asserting the truth, and, therefore, they should stand *in loco parentis*, or as a guardian over the affairs of such men, and encourage such claims. To do so places an unjustifiable premium on indiscretion, unreasonable inattention to business and indolence at the expense of the exercise of prudence, ordinary diligence in business transactions and business judgment.

The facts in the instant case distinguish it from the cases of Monsanto Chemical Works v. American Z. L. & S. Co. (Mo.), 253 S. W. 1006, 1008; Goar v. Belinder, 213 Mo. App. 330, 339, 249 S. W. 977, 980; Flack v. Wahl, 197 Mo. App. 10, 23, 193 S. W. 56, 58; Wendell v. Ozark Orchard Co. (Mo. App.), 200 S. W. 747, 749;

Luikart v. Miller (Mo.), 48 S. W. (2d) 867, 869(7) ; Finke v. Boyer, 331 Mo. 1242, 1251(4), 56 S. W. (2d) 372, 375(5), and other cases relied on by plaintiff. We deem it not necessary to discuss the cases individually. Analyzing them reveals that either the case was not tried below on the defense here interposed; or that it was apparent from the evidence action had been induced by and was the result of the misrepresentation; or that the means of information were not at hand or equally open to both parties. Among the more salient facts distinguishing such cases from the instant case are: That the misrepresentor urged the transaction upon the misrepresentee. That a confidential relation (or its equivalent, in law, under the facts involved) existed. That the misrepresentor had exclusive possession of the facts and refused to make disclosure to the misrepresentee upon request. That the misrepresentee was hampered, or restrained from or interfered with in his opportunities or efforts to investigate and ascertain the facts by reason of his distance from the property involved or obstacles or further misrepresentations interposed by the misrepresentor. That the misrepresentee was ignorant or inexperienced or under a disability with reference to the subject matter of the transaction. That the misrepresentee disclosed to the misrepresentor that he was relying upon the representations made. Judd v. Walker, 215 Mo. 313, 114 S. W. 979, and Stonemets v. Head, 248 Mo. 243, 154 S. W. 108, when read in the light of the facts peculiar to the respective cases are not against the conclusion here reached. [See the observations in Bragg v. Kirksville Packing Co., 205 Mo. App. 1. c. 608, 226 S. W. 1. c. 1015, which we need not repeat.] These and other cases recognize the obligation the law imposes on the part of the misrepresentee to exercise such care and attention as is exercised by ordinarily prudent men in like businss transactions.

 Adverting more specifically to the fraud alleged:
Statements as to the value do not ordinarily constitute fraud. [Mitchell v. Eidson, 330 Mo. 445, 451, 50 S. W. (2d) 135, 137(2).] Mrs. Shore testified she asked "Mr. Laederich what he *thought* the property was worth." He asked Mr. Morgan, who said $145,000. "Then Mr. Laederich said the building was worth 'at least $145,000.'" The statement was made in response to a request for an opinion. Mr. Laederich asked Mr. Morgan before answering, and stated the same figure. Giving consideration to these factors, the statement was an expression of opinion, and not a statement of fact. Further, there is a presumption of right action on the part of the trial court, and upon review, the burden is upon an appellant to disclose the error complained of. [O'Malley v. Heman Const. Co., 255 Mo. 386, 392, 164 S. W. 565, 566(5).] If Mr. Laederich's answer was a statement of fact, plaintiff's narrative, in disclosing the error of the trial court, should have quoted more of the testimony

than "at least $145,000" to enable this court to find error on this ground.

■ Having reached the conclusion that plaintiff might not successfully allege fraud with reference to the misrepresentations of value, she is in no position to avail herself of like misrepresentations as to cost. There is an entire absence of evidence that the transaction with plaintiff was on any basis other than the value of the leasehold. Had she taken advantage of the ample and unrestricted opportunities available to ascertain the value of the property, she could not have relied on what Barrett may have paid for it. [See, in this connection, McCall v. O'Malley, 298 Mo. 401, 415(4), 249 S. W. 41, 45(6).]

■ Plaintiff's petition proceeds on the theory that there was no net income from the leasehold, and the alleged misrepresentations of defendant Laederich (detailed in the statement of facts) that it would carry itself and leave a little net income was actionable. The exhibit offered in evidence showed the annual gross rental and certain items of expenses, itemized; leaving a net balance of $9,156. Although the petition proceeds upon the theory that Laederich's statement was to the effect the net annual income was $9,156, Mrs. Shore testified he explained to her that interest and the annual installments on the first mortgage would have to be met; that after reducing the annual installments from $4,000 to $3,000 for four or five payments (after which it would be $5,000 annually) there would be left $1,256. We think it obvious, if this representation be considered one of fact, to one engaged in the management of real property consisting of residences, apartments, store buildings and hotel property that the exhibit upon which the representation was based included no allowances whatever for depreciation, and such items as painting, decorating, window cleaning, supplies of all kinds and repairs and water filter service. To one having the experience of plaintiff and her agents, upon the addition of these items of expense (some of which plaintiff offered to prove would total $2,000 or more annually) it should have been apparent there would be no annual net income after the payment of the interest and installments due on the first deed of trust. Especially do we think this conclusion inevitable upon giving consideration to the fact that for four or five months plaintiff and her agents had the exhibit before them and by the exercise of any degree of attention must have discovered that the exhibit did not include these items of expense. Defendants neither practiced nor brought to bear on plaintiff or her agents any fraud during this period to induce them to refrain from an examination of the statement or which prevented them from informing themselves as to the truthfulness or the extent of the information therein set forth. Had they given some reasonable attention, as they had ample and unrestricted opportunity to do, to the statement, they must have

discovered the true extent of the facts there embraced; and to this obvious result they should not be permitted to close their eyes.

Under the facts of the instant case, the judgment should be affirmed. It is so ordered. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.