JAMES W. BRADFORD et al., Respondents, v. W. L. WRIGHT, Appellant.

St. Louis Court of Appeals, November 30, 1909.

FRAUD AND DECEIT: Representations not Calculated to Deceive: Case Stated. Neither law nor equity will offer relief for false representations where the subject-matter of dispute is equally known to both parties, and if a person trusts to representations which are not calculated to impose upon a person of ordinary prudence, or neglects the means of information within easy reach, he must suffer the consequences, so that, where plaintiffs were induced to pay for the surrender of a contract of agency for the sale of land made by them, on the false representation it gave the agent the exclusive agency, they

could not recover, where the agent on two occasions gave one of the plaintiffs the written contract, which was not exclusive, and, though she could read, she did not examine it to ascertain its contents, and where the other plaintiff testified he knew it did not provide for an exclusive agency.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED.

*P. H. Cullen* for appellant.

(1)   The proof shows that the payment by plaintiffs was voluntary, and they had knowledge of all the facts, and were not misled by any fraud. State ex rel. v. Stonestreet, 92 Mo. App. 220; Teasdale v. Stoller, 133 Mo. 651; Jefferson County v. Hawkins, 23 Florida 231; Baldwin v. Foss, 71 Iowa 389; Redmond v. Mayor, 125 N. Y. 632.   (2) Neither law nor equity will afford relief where the subject-matter of dispute is equally known to both parties or the means of knowledge easily within the reach of the party complaining.   118 Mo. App. 417; 85 Mo. App. 183; Buford v. Caldwell, 3 Mo. 477; Davis v. Insurance Co., 81 Mo. App. 264; Champion F. & F. Co. v. Hesket, 102 S. W. 1050; Pratt v. Philbrook, 33 Me. 17.

*S. D. Stocks, Geo. Robertson* and *F. R. Jesse* for respondent.

(1)   Payment made under a mistake of fact effecting the liability of the payor, may be recovered back. Columbus Ins. Co. v. Walsh, 18 Mo. 229; Norton v. Behart, 105 Mo. 615; Davis v. Eyerman, 10 Mo. App. 437; Davis v. Krum, 12 Mo. App. 279; Yates v. Hines, 24 Mo. App. 619; Morley v. Carlson, 27 Mo. App. 5; Jordan v. Harrison, 46 Mo. App. 172; Connell v. Hudson, 53 Mo. App. 418.   (2)   Fraud because of active representations of persons receiving the money, thereby bringing

an element of deceit or fraud, the money may be recovered. 22 Am. and Eng. Ency. of Law (2 Ed.), p. 630; State v. Stonestreet, 92 Mo. App. 214; Foster v. Kirby, 31 Mo. 497; Harris v. Board of Education, 3 Mo. App. 570; Webster v. Dewitt, 36 N. Y. 340, 93 Am. Dec. 517. (3) Where one laboring under a mistake of fact induced by a misleading statement of another, to pay money to the latter, he may recover the money back, though he was guilty of negligence in making the payment. Lyle v. Shaunberger, 17 Mo. App. 66. (4) Right of action comes upon a want of knowledge of the true state of facts; it is not destroyed by the circumstances that the payor had means of better information which he failed to use. Harris v. Board of Education, 3 Mo. App. 570; Lyle v. Shaunberger, 17 Mo. App. 66. (5) An action for money had and received will lie, if where an illegal demand has been paid under an urgent necessity, and where one is confronted with the question of whether they shall pay the money, or suffer the serious consequences to be reasonably apprehended from a refusal so to do, etc. Money paid under such circumstances would be under an urgent necessity—a kind of moral duress. Wells v. Adams, 88 Mo. App. 215; Fout v. Giraldin, 64 Mo. App. 165; Joannin v. Ogilvie, 49 Minn. 564; Pemberton v. William, 87 Ill. 15; White v. Hazleman, 34 Pa. St. 142. (6) Duress may be shown with respect to real property as well as personal, so as to render payment on account of it involuntary and permit it to be recovered back. Wells v. Adams, 88 Mo. App. 215; Fout v. Giraldin, 64 Mo. App. 165. (7) Party accepting payment is bound to disclose material facts peculiarly within his knowledge, or not speak. In case he does not he is bound and answerable in damages on ground that he is guilty of fraudulent concealment. Grigsby v. Stapleton, 94 Mo. 423; Raley v. Williams, 73 Mo. 310.

NORTONI, J.—This is an action for the recovery of money alleged to have been procured from plaintiffs through a fraudulent representation. The plaintiffs recovered and defendant appeals.

The defendant is a real estate agent and as such held an agency contract with one of the plaintiffs for the sale of a farm owned by them jointly. Prior to the expiration of the contract the plaintiffs, desiring to sell their farm to another party, paid defendant fifty dollars to surrender his agency with respect thereto. Plaintiffs allege that they were induced to pay defendant the fifty dollars mentioned by a false and fraudulent representation on his part to the effect that he held an exclusive agency contract for the sale of the land and that he could thus prevent the sale to another. This issue was submitted to the jury and on it the finding was for the plaintiffs.

We believe the court erred in submitting the issue of fraudulent representation to the jury and that it should have directed a verdict for the defendant for the reason that one of the plaintiffs testified positively he knew the defendant did not hold an exclusive contract of agency on the farm and for the reason that the other plaintiff had the defendant's agency contract in her hands on two separate occasions for examination before parting with the money alleged to have been induced by the representation mentioned.

It appears the two plaintiffs are brother and sister, one a matured man and the other a matured woman. We infer from the testimony that one is a bachelor and the other a maiden lady. They owned and resided upon a farm in Ralls county.

On the 28th day of March, the plaintiff, James Bradford, executed a written contract of agency whereby he appointed the defendant as agent to sell the farm referred to at fifty dollars per acre, defendant to have as commissions any amount he might receive over and above that price. The contract in no respect stipulated

for an exclusive agency, but, on the contrary, was an ordinary agency contract authorizing the defendant to negotiate a sale of the land at any time within the year referred to. The defendant real estate agent advertised the farm for sale in several newspapers and conveyed and directed one or two prospective purchasers to view it. It appears, too, that by an arrangement with another agent in Kansas, he induced the plaintiff, James Bradford, to accompany himself and the other agent to both Wichita and Winfield, Kansas, on a trade for other lands. The defendant and the plaintiff, James Bradford, and the Kansas agent all went to Kansas on the same train. They inspected several pieces of property in that State and finally James Bradford entered into a written contract to exchange the farm in Ralls county, Missouri, for Kansas land, provided his sister and co-plaintiff herein, approved the same. Upon his return to Missouri, Miss Bradford dissented and the trade was never made.

The matter ran along until in the month of December when plaintiffs commenced to negotiate a sale of their land with another party and the plaintiff, Miss Bradford, called upon the defendant, saying that she understood he claimed to have an exclusive agency contract for the sale of the farm. She informed him that she had never signd any contract whatever conferring an agency upon him and that if he had any such contract he had forged her name thereto. Thereupon the defendant exhibited the contract to Miss Bradford. She took the same in her hand and looked at it. She testified that she did no read it for the reason her glasses were not convenient. Upon looking at it, however, she recognized her brother, James Bradford's signature and upbraided him in the presence of the defendant real estate agent for having given the defendant a contract of agency on the land and denying the fact to her. In fact, if we understand the testimony, she told her brother and co-plaintiff that he had "lied" to her

about having given the defendant a contract of agency upon the land, for there was his signature before her. He admitted having signed the contract and also of having full knowledge of its contents, that is, he testified the defendant read the contract over to him at the time he signed it and that he knew it did not stipulate an exclusive agency for the defendant.

It seems, too, that the plaintiff, Miss Bradford, ratified the contract at this time, for thereafter she conceded the defendant's agency thereunder, and, indeed, this suit proceeds upon the theory that the contract of agency referred to was and is the contract of both parties, for it is alleged in the petition "that plaintiff constituted the defendant their agent and authorized the defendant to sell said land at and for the sum of fifty dollars per acre net to them." After inspecting the contract in defendant's possession and ascertaining that her brother and co-plaintiff had executed the same, Miss Bradford, in the presence of her brother, informed the defendant that they desired to be released therefrom for the reason they were negotiating a trade with another party. Defendant informed them that he had been to considerable expense under the contract in advertising the land and showing it to parties and mentioned the trip to Kansas with her brother, the plaintiff, James Bradford, in an endeavor to trade it for Kansas land. He said in view of this and the further fact that the contract did not expire until the following March 28th, he would not surrender his agency unless the parties paid him fifty dollars. The plaintiffs declined to pay defendant fifty dollars to surrender the contract, left town and drove to their home in the country. The following morning, Miss Bradford returned and called at the defendant's office a second time concerning the matter. On the occasion of this visit, the defendant's agency contract was exhibited to her a second time. Although the contract was principally printed matter of the usual form and

the lady could read and write, she testified that she failed to read it upon this second examination as she did upon the previous occasion. She said. "I threw it it down and went out of the office. I says, 'I won't pay you a cent.' " It appears that plaintiffs considered the matter for two or three days and, after taking advice from a banker friend, paid the defendant fifty dollars and he surrendered the contract.

As stated, the ground of recovery relied upon in the petition is that the defendant represented to the plaintiffs he held an exclusive contract of agency for the sale of their land, and they were induced to pay the fifty dollars for its surrender because of the false statement with respect to the contract stipulating an exclusive agency. It is said the plaintiffs believed and relied upon such false representation and were misled thereby.

Now it is entirely clear that the plaintiff, James Bradford, was not deceived by such a statement, if it were made, for he testified repeatedly in his examination that he knew the contract did not stipulate an exclusive agency. The following questions and answers from his testimony reveal his knowledge on the subject:

"Q. And when you signed it you know it was not an exclusive contract you say? A. Mr. Wright read the contract in it and there wasn't anything in it about that.

"Q. There wasn't anything in it about being an exclusive contract? A. No, sir, it was just a plain contract on land.

"Q. Well, he laid it on the table and you signed it? A. Why, certainly he did.

"Q. And he read it over to you and you heard nothing about it being an exclusive contract, did you? A. No, sir.

"Q. This was the only contract you ever signed? A. Yes, sir, that was the only one.

"Q. You remember signing this? A. Yes, sir.

Bradford v. Wright.

"Q. And remember that it was not an exclusive contract? A. Yes, sir."

It is obvious from this testimony that the plaintiff, James Bradford, was not deceived or misled by any statement that defendant may have made about having an exclusive contract for the sale of the land, for he knew the fact to be otherwise. He repeatedly so states throughout his testimony.

So far as the defendant is concerned, he denies having made any such representation with respect to an exclusive contract. He asserts that he declined to surrender the contract for the reason considerable expense had been incurred about advertising and showing the land and accompanying James Bradford to Kansas; that so far he had received nothing in return and hoped between December 16th and the 28th of the following March to make a trade which might recoup him.

We come now to consider the cause with respect to the testimony of the other plaintiff. Miss Bradford insists she was deceived by the statements of the defendant to the effect that he had an exclusive contract for the sale of the land and that she was induced to pay him the fifty dollars for its surrender by these false statements which she believed to be true.

It is a familiar rule that neither law nor equity will afford relief where the subject-matter of dispute is equally known to both parties, or about which both parties had equal means of information and in regard to which they are equally negligent. If a party trusts to representations which are not calculated to impose upon a person of ordinary prudence, or if a party neglects the means of information easily within his reach and before his eyes, he must suffer the consequences of his own folly and credulity. It is said the law will presume that a person will take care of himself. He can not go abroad without thought, care or judgment, relying on the law to guide and protect him in his dealings with his fellow men. The law will not relieve him

because he has been credulous nor will the law care for one who will not care for himself. Either the knowledge of the condition of things or the means of knowledge readily open to and before the eyes of the complaining party, with respect to a matter susceptible of easy ascertainment, will bar an action for fraud and deceit unless the party has been thrown off his guard by some scheme or deceit practiced by the other party. [Davis v. Phoenix Ins. Co., 81 Mo. App. 264; Buford v. Caldwell, 3 Mo. 335; Dunn v. White, 63 Mo. 181; Cahn v. Bungardt, 18 Mo. App. 115.]

Now, it is obvious that the plaintiff, Miss Bradford, is precluded from recovery here by her own neglect and fault. Although she knew nothing whatever of the contract in the first instance, it was given into her hands for inspection on two separate occasions, she was permitted to examine and read it if she cared to. She could read but failed to read—the first time she says because her glasses were not convenient. Why she failed to read the contract the second time she examind it is unexplained. It appears that the defendant made no attempt to conceal the contract nor its contents. He resorted to no scheme or device whatever to prevent her from making a full and complete examination for herself. Indeed, after having handled the contract and looked at it on two occasions Miss Bradford took the matter under advisement and through her brother consulted counsel as to what to do in the premises. And at the time the money was paid, she was accompanied by her friend, a banker, who might have read the contract for her if she had so desired or instructed.

Manifestly, any person of ordinary intelligence, as was this plaintiff, who could read and write, could discern from this printed contract that it did not purport an exclusive right in the defendant to sell the land. If Miss Bradford was deceived at all, her deception resulted from the fact that she failed and neglected to avail herself of the means of certain knowledge with

respect to the truth or falsity of the representation which was placed in her hands and immediately befor her eyes. The judgment should be reversed. All concur.