**HANSON et ux.**

`v.

**ACCEPTANCE FINANCE CO., Inc.**

No. 21862.

Kansas City Court of Appeals.

Missouri.

May 3, 1954.

Rehearing Denied July 7, 1954.

William E. Tipton, Kansas City, Barak T. Mattingly, St. Louis, for appellant.

Robert M. Murray, Charles V. Garnett, Kansas City, for respondents.

BOUR, Commissioner.

This is an action to recover actual and punitive damages for alleged fraud in a loan transaction. The plaintiffs are Richard L. Hanson and Martha M. Hanson, his wife. The original petition and the first amended petition, as originally filed, designated the defendants as "Local Finance Company, a corporation, Motors Insurance Corporation, a corporation, and Union Mutual Life Insurance Company, a corporation". Before trial, and on April 7, 1952, the parties filed a written stipulation which reads in part as follows: "It appearing that the defendant named herein as Local Finance Company, a corporation, is in fact not a corporation, but is the trade name employed by Acceptance Finance Company, a corporation, for the transaction of its business in Kansas City, Missouri and elsewhere, and said Acceptance Finance Company, a corporation, now appearing by its attorneys and consenting hereto, it is agreed that said Acceptance Finance Company, a corporation, may be substituted as a party defendant herein in place and instead of the defendant named as Local Finance Company, a corporation. * * * Acceptance Finance Company, a corporation, by its attorneys duly authorized hereby enters its appearance as a defendant in this cause and hereby waives the issuance and service of summons or other process upon it. * * * It is agreed that plaintiffs' amended petition herein shall be amended to substitute Acceptance Finance Company, a corporation, as party defendant herein in place and instead of the named defendant Local Finance Company, * * *." The record contains an entry, dated April 7, 1952, which reads in part: "By leave of court plaintiffs amended their amended petition by substituting as party defendant, Acceptance Finance Company, a corporation, in lieu of defendant Local Finance Company, * * * in accordance with stipulation filed herein * * *."

The first amended petition was drawn in two counts. At the close of plaintiffs' case plaintiffs were granted leave "to amend their amended petition" in certain

particulars. In count one of the petition, as amended at the close of plaintiffs' case, plaintiffs prayed for actual damages in the sum of $119.50. In count two plaintiffs prayed for punitive damages in the sum of $15,000. The parties are not in complete agreement as to the nature of the cause of action which plaintiffs attempted to plead. However, the case seems to have been tried as an action for damages for fraud and deceit. In view of the conclusions which we have reached in the case it would serve no useful purpose to summarize the pleadings. It may be stated in passing that the division of the petition into counts was unnecessary.

The record shows that before trial plaintiffs dismissed their case as to defendant Motors Insurance Corporation. At the close of plaintiffs' case the court directed a verdict for defendant Union Mutual Life Insurance Company on both counts of the amended petition. At the close of all the evidence the remaining defendant, Acceptance Finance Company, moved for a directed verdict on both counts of the amended petition, which motion was overruled. The jury returned a verdict against defendant Acceptance Finance Company, for $119.50 actual damages and $5,500 punitive damages, and judgment was entered accordingly. The Acceptance Finance Company has appealed.

Plaintiff Martha M. Hanson testified in person and the deposition of plaintiff Richard L. Hanson was read to the jury. The Acceptance Finance Company called no witnesses, but for reasons unknown to us it introduced in evidence plaintiffs' first amended petition. For convenience, Richard L. Hanson will sometimes be designated as "Hanson" and his wife as "Mrs. Hanson"; and hereafter, when we use the term "defendant" or "loan company", we have reference to defendant-appellant Acceptance Finance Company, d/b/a Local Finance Company.

The evidence showed that on December 21, 1948, the plaintiffs, being in need of money to pay certain debts, aggregating $1,220.36, and to defray certain expenses "at Christmas time", went to defendant's office in Kansas City, Missouri, and applied for a loan of approximately $1,400. After discussing the matter with B. L. Smith, defendant's local manager, and pursuant to an agreement between the parties, plaintiffs executed and delivered to the loan company their promissory note dated December 21, 1948, in the sum of $1,890, payable in 18 installments of $105 each, the first installment being payable on January 31, 1949, and one of the remaining installments being payable on the last day of each of the succeeding 17 months. The note reads in part as follows: "For value received the undersigned promises to pay to the order of Local Finance Co., at its office in Kansas City, Missouri, the amount of the principal debt as indicated above and payable in installments as indicated herein, with interest *after maturity* at the rate of eight per cent (8%) per annum until paid (*interest to maturity at the highest lawful contract rate having already been deducted*)". (Italics ours.) It is conceded that the "highest lawful contract rate" was 8% per annum. Sec. 3227, RSMo 1939, now Section 408.-030 RSMo 1949, V.A.M.S. For the purpose of securing the payment of the note, plaintiffs executed a chattel mortgage on their household goods and automobile, and Dale E. Culver signed the note as an accommodation maker.

Before the note and chattel mortgage were executed, Smith informed plaintiffs that they would be required to purchase credit life insurance on Hanson's life, as well as health and accident insurance for Hanson, and to insure for defendant's benefit the automobile described in the chattel mortgage, as additional security for the payment of the loan. Smith told plaintiffs that the cost of the life, health and accident insurance would be $201.76 and that the cost of the automobile insurance would amount to $43.90. Plaintiffs objected to paying the insurance premiums but it was finally agreed that the total cost of the insurance would be included in the note as a part of the principal and the premiums paid out of the proceeds of the loan. As we understand the evidence, Smith prepar-

ed the note and chattel mortgage. Plaintiffs testified that they read the note and discussed it with Smith before they signed it; that they were told by Smith that interest on the loan, at the rate of 8% per annum—the highest legal rate, had been included in the note as a part of the principal. Plaintiffs further testified that Smith told them the interest on the loan, at the rate of 8% per annum, amounted to $226.80.

As stated, the note and mortgage were executed on December 21, 1948. On the same day, and in accordance with the agreement between the parties, defendant loan company issued eleven checks as follows: One for $201.76, payable to Hanson and Daniel Charles, agent for Union Mutual Life Insurance Company; one for $43.90, payable to Hanson and Motors Insurance Corporation; eight for sums aggregating $1,220.36, each of which was made payable to Hanson and one of plaintiffs' creditors; and one for $197.18, payable to Hanson. The first two were endorsed by Hanson and left with Smith. Policies of insurance (life, health and accident, and automobile insurance) for the premiums stipulated were obtained and held by the defendant until after the note for $1,890 was paid in full. There was no evidence that the defendant or its agent, Smith, received any part of the insurance premiums; nor was there any evidence that the defendant or Smith received any commission by reason of the insurance policies having been written. Hanson also endorsed the eight checks drawn for sums aggregating $1,220.36 and each check was sent by defendant to the creditor named therein, so that the debts incurred by plaintiffs before they applied for the loan were paid in full. Mrs. Hanson testified that the check for $197.18 "represented actual cash we got from the loan company". The aggregate amount of the eleven checks issued by defendant was $1,663.20. The sum total of $1,663.20 and $226.80, the interest charged by defendant, is $1,890, the principal amount of the note executed by plaintiffs. It is conceded that the amount of interest ($226.80) included in the note as a part of the principal exceeded the maximum lawful rate of 8% per annum.

On direct examination, Mrs. Hanson testified in part as follows: "Q. What discussion, if any, did you have with Mr. Smith about the rate of interest you would have to pay for the loan? A. Mr. Smith told me that the interest was 8% per annum. * * *

"Q. Did you know how much 8% per annum interest would be in money? A. No. We never—we had no reason to doubt anything, and we just never sat and figured what the actual figures would be. * * *

"Q. Well, * * *: Referring to the note, plaintiffs' Exhibit 1, did you read the note or go over it with Mr. Smith before you signed it? A. We did; Mr. Hanson and I.

"Q. What, if anything, was said to you by Mr. Smith about the rate of interest which was to be in the note? A. It was included in the amount of the note, and it was to be at the highest rate of interest. * * *

"Q. What did you understand was the highest contract rate of interest at that time? A. Eight per cent.

"Q. Did you, when you signed the note did you believe that just 8% per annum had been included in the note? A. Yes, sir.

"Q. Did you have—was there anything said or done by Mr. Smith which would cause you to disbelieve him or to inquire whether he had charged more interest than 8%? A. No.

"Q. Did you rely upon the statement in this note, that it was just 8% per annum interest in it? A. Yes, sir."

After identifying the eleven checks issued by defendant for sums aggregating $1,663.20, Mrs. Hanson continued: "Q. Now, these checks, then, represent all the bills that were paid for you plus the amount of cash that you received out of the loan, and the balance, I take it, makes up the $1,890. A. Yes, sir.

"Q. Now, the balance, Mrs. Hanson, between the total of these checks, which is $1,663.20, is $226.80. Did you know that the note included all of these and $226.80? A. Yes, sir.

"Q. Did you at any time know what rate of interest $226.80 would represent? A. No, sir. We were told—Mr. Smith discussed 8% and we trusted him in our dealings, and we never figured it up. * * *

"Q. Was anything said to you by Mr. Smith about the effect of a note which included the full 18 months' interest at 8% per annum when it was payable $105 a month over 18 months' period? A. No, there wasn't."

Mrs. Hanson testified on cross-examination: "Q. Did Mr. Smith explain to you and give you the figures on this, what would be included in the promissory note and chattel mortgage, before you and Mr. Hanson executed the promissory note and chattel mortgage? A. Yes, sir. * * *

"Q. And you didn't want to execute or go into this deal, did you? A. No, I didn't.

"Q. And after you and Mr. Hanson had a discussion about it, Mr. Hanson persuaded you to go ahead and go through with the deal. A. Yes, sir. * * *

"Q. Now, these checks that Mr. Murray read off, I believe those checks total a total amount of $1,663.20, is that right? A. Yes, sir.

"Q. And the difference between $1,663.-20 and $1,890 is a difference of $226.80? A. Yes, sir.

"Q. You knew that was the amount that Mr. Smith was charging you for making the loan? A. That was interest. * * *

"Q. You knew that was being charged you? A. I knew 8% per annum was being charged, yes, sir.

"Q. Did you know that $226.80 was being charged you for making this loan? A.

I knew that represented the interest, or was supposed to represent the interest."

Mr. Hanson testified (by deposition) as follows: "Q. What was said, if anything, by Mr. Smith about the rate of interest that you would be charged for this money? A. We understand it was eight per cent. * * *

"Q. Not what you understood, what did Mr. Smith say to you? A. That is what I mean, he told us it was eight per cent—per annum.

"Q. And did you ever attempt to figure out whether the amount of insurance—the amount of interest which was included in the amount of $1,890.00 principal sum of the note was eight per cent or some other rate? A. I never gave it too much thought, but it looked like to me it was pretty high rate of interest. * * *

"Q. The point I am asking is, at the time you were told how much interest and what rate of interest you would be charged for the $1,890.00, did you know that there was—that the eight per cent interest charged in the note for the 18 months was increased when the note was paid off monthly or weekly instead of it all being paid off at the end of the term of the note? A. No, I didn't. * * *

"Q. When Mr. Smith told you the amount that the note was to be, did he also tell you the different items that were to be made up of the $1,890.00? A. Yes, sir."

On cross-examination, Mr. Hanson testified: "Q. I understood you on direct-examination in response to a question asked by Mr. Murray that you were given a list by Mr. Smith of the amounts, both of the cash you got and how it was to be disbursed and also the amount of the insurance and how that was to be disbursed and the amount of the interest? A. That is right. * * *

" Q. And all that was given to you and itemized for you before you executed the instrument, wasn't it, the note and mortgage? A. Yes, sir.

"Q. And after knowing all of those facts you still went ahead and consummated the deal and executed the note and chattel mortgage and took the money? A. Yes, I did."

Plaintiffs further testified that after the loan was consummated they informed Smith that it would be more convenient for them to make weekly payments on the note than to pay $105 each month for a period of 18 months. Plaintiffs testified and defendant admits that between January 3, 1949 and December 12, 1949, a period of 49 weeks, plaintiffs paid to defendant the total sum of $1,323, in 49 weekly installments of $27 each, thus reducing the indebtedness to $567; and that on December 22, 1949, and more than six months before the last installment of $105 would have become due under the terms of the note, plaintiffs paid defendant the balance of the indebtedness. Plaintiffs borrowed $567 from Commerce Acceptance Company, another loan company, and used the money to make the final payment on the note. This suit was filed on January 27, 1950.

The note for $1,890 did not provide for optional prepayment. It is generally held that where a loan contract does not provide for optional prepayment and the borrower voluntarily repays the loan before maturity, the lender's acceptance and retention of interest to the maturity date stipulated in the contract does not make the transaction usurious, even though, by reason of such payment, the amount of interest received by the lender exceeds the lawful interest computed to the date when the loan was paid. 55 Am.Jur., Usury, sec. 47, p. 359; Williston on Contracts, Vol. VI, sec. 1695, p. 4795. In the instant case, however, the loan transaction was usurious, regardless of the advance payments made by plaintiffs. If the loan had been carried out for the complete term contemplated by the contract, defendant would have received interest in excess of 8% per annum.

Plaintiffs called an experienced lawyer as an expert witness and his qualifications were admitted by defendant. In answering several hypothetical questions he assumed that plaintiffs borrowed $1,663.20 from defendant; and that interest in the sum of $226.80 was included in the principal of the note evidencing the debt, making a total of $1,890.00, which sum plaintiffs contracted to pay in 18 monthly installments of $105 each. According to this witness, interest at the rate of 8% per annum on $1,663.20 (payable in 18 monthly installments of $105 each) would amount, for the full term of 18 months, to the sum of $107.31. If this figure is correct, the defendant charged and received 119.50 in excess of the maximum amount of interest permitted by the statute. The defendant, as well as the plaintiffs, accepted these figures as correct. In count one of the petition, as amended at the close of plaintiffs' case, plaintiffs prayed for $119.50 actual damages. At the close of plaintiffs' case defendant's counsel tendered to plaintiffs "the sum of $119.50 plus costs" but the tender was refused.

As stated, the verdict and judgment were in favor of plaintiffs for $119.50 actual damages and $5,500 punitive damages. Defendant loan company contends that the court erred in submitting the issue of fraud to the jury, because (a) Sec. 3229, R.S.Mo., 1939, now Section 408.050 RSMo 1949, V.A. M.S., prescribed the exclusive remedy for the recovery of usurious interest paid; (b) plaintiffs failed to prove facts which would entitle them to recover in a common-law action for fraud and deceit; and (c) the petition upon which the case was tried failed to state a cause of action for fraud and deceit. Under Sec. 3229, supra, recovery may be had only for "sums of money paid in excess of the principal and legal rate of interest" on the loan, and reasonable attorney's fees. Defendant further contends that the court erred in giving plaintiffs' instructions Nos. 3 and 4, and in refusing to give defendant's instruction D; and that the award of punitive damages was excessive. We need not determine whether Sec. 3229, supra, afforded the exclusive remedy for the recovery of usurious interest paid, or whether the amended petition stated a common-law action for fraud and deceit, but only whether plaintiffs' evi-

dence was sufficient to make a submissible case of fraud and deceit. If plaintiffs failed to make out such a case the other alleged errors are immaterial.

■ In Lowther v. Hays, Mo.Sup., 225 S.W.2d 708, 713, the court quoted 37 C.J.S., Fraud, § 3, p. 215 as follows: "'Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon.'" A failure to establish any one of these essential elements is fatal to a recovery. Powers v. Shore, Mo.Sup., 248 S.W.2d 1, 5; Dolan v. Rabenberg, 360 Mo. 858, 231 S.W.2d 150, 154. We think the decisive question in this case is whether plaintiffs failed to establish element "(8)".

■ The principle is well established that in order to secure relief on the ground of fraud, the complainant must have been justified, under the circumstances of the case, in relying upon the misrepresentation which is sought to be made the basis of the charge of fraud. It is undoubtedly true that the principle of right of reliance is closely bound up with a duty on the part of the representee to use some measure of precaution to safeguard his interest. 23 Am. Jur., Fraud and Deceit, sec. 146, p. 948. In many cases it is stated, as a broad generalization, that a person to whom false representations have been made is not entitled to relief because of them if he might have ascertained the truth by the exercise of ordinary care and prudence, and his failure to do so was the result of his own negligence. See, in this connection, McCaw v. O'Malley, 298 Mo. 401, 403, 249 S.W. 41, 44. It is recognized, however, that there are limitations to this broad rule. A careful reading of the cases discloses that in determining whether or not reliance upon a representation in a particular case is justifiable or excusable, what constitutes reasonable prudence and diligence with respect to such reliance, and what constitutes a reckless failure to exercise such prudence, the courts consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relation of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and the respective knowledge and means of knowledge of the parties. 37 C.J.S., Fraud, § 30, p. 272; 23 Am.Jur., Fraud and Deceit, sec. 155, p. 960. Each case must be decided upon its own facts. Messina v. Greubel, 358 Mo. 439, 215 S.W.2d 456, 459.

In Wood v. Robertson, Mo.Sup., 245 S.W.2d 80, 84, it was said: "Where the issue of fraud involves the element of the right to rely on the alleged fraud-feasor's representation, it is misleading to say the evidence must show fraud *plus* absence of negligence; and it is a misnomer to use the word 'negligence' in this connection, if it is understood as carrying its usual signification, because 'the law of fraud does not exact of the victim that degree of caution which some other hypothetically prudent person would have used, but only reasonable care in view of *his* situation.' State ex rel. Union Pac. R. Co. v. Bland, 324 Mo. 601, 23 S.W.2d 1029, 1032; Messina v. Greubel, supra; Bertram v. Kempster, supra. * * * this court has gone a long way to protect the foolishly credulous, as consonant with the administration of pure justice; but the courts will not protect those who, with full opportunity to do so, will not protect themselves. And where the means of knowledge are at hand and are equally available to both parties and the subject matter is alike open to their investigation, if one of them does not avail himself of those means and opportunities he will not be heard to say that he was deceived by the other party's misrepresentation, if there be no confidential relationship between the parties and if no fraudulent devices have been practiced upon the one alleged to have been defrauded to induce him to refrain from making an inquiry, or to anesthetize his sense of caution. Conklin v. Missouri Pac. R. Co., 331 Mo. 734,

55 S.W.2d 306; State ex rel. Union Pac. R. Co. v. Bland, supra; Poe v. Illinois Central R. Co., 339 Mo. 1025, 99 S.W.2d 82; Rau v. Robertson, Mo.Sup., 260 S.W. 751. But the contrary is true where the alleged fraud-feasor fraudulently induces his adversary to refrain from inquiry as where the fraud-feasor has, or by calculation and artifice obtains, the confidence of the other and causes him to forego the exercise of caution." (Citing cases.) See also Orlann v. Laederich, 338 Mo. 783, 92 S.W.2d 190; Weitzman v. Weitzman, Mo.Sup., 156 S.W.2d 906; Bradford v. Wright, 145 Mo.App. 623, 123 S.W. 108.

In the instant case, plaintiffs testified that they borrowed $1,663.20 from defendant; that they executed and delivered to defendant their promissory note for $1,890, payable in installments as stated above; that they read the note and discussed it with Smith, defendant's local manager, before they signed it; that Smith told them that interest on the loan at the rate of 8% per annum—the highest legal rate, had been included in the note as part of the principal; that Smith also told them such interest amounted to $226.80; and that Smith gave them an itemized statement of the various amounts included in the principal of the note before they executed the note and chattel mortgage. It is evident that plaintiffs knew the amount of the interest charge *in dollars and cents* before they accepted the loan and executed the note and mortgage. The only misrepresentation disclosed by plaintiffs' testimony was to the effect that the interest ($226.80) included in the note had been computed at the rate of 8% per annum. We must accept plaintiffs' testimony as true and assume that Smith made such a statement to them. In addition, the note recited that "interest at the highest lawful contract rate" had "already been deducted". We think it is clear that plaintiffs had sufficient knowledge of the facts before the loan was consummated to enable them to determine whether interest on the loan at the rate of 8% per annum, would amount to $226.80. Their testimony shows that they are intelligent persons with considerable business experience. They had borrowed

money from other loan companies "on numerous occasions" before they applied for the loan in question. From 1939 to September, 1950 Hanson worked for an ice company as a salesman. During that time he sold ice on a commission basis and earned about $6,500 a year. Mrs. Hanson had attended a business school where she learned to operate a comptometer (a calculating machine) and had worked as a comptometer operator for a time. She said she knew "how to figure 8%".

In support of their contention that they had a right to rely upon Smith's representation that the interest included in the note had been computed at the rate of 8% per annum, plaintiffs state "that it takes extended mathematical calculations to determine *in dollars* the amount which is to be included as interest at 8% in a note payable in 18 equal installments" and that such calculations would involve eighteen separate steps, because the payment of each installment reduces the amount of the debt. Plaintiffs seem to contend that they were under no duty to make such calculations for the purpose of determining whether Smith's representation concerning the interest rate was false. It was not necessary for plaintiffs to make the eighteen separate calculations described in their brief in order to determine whether the amount of interest ($226.80) included in the face amount of the note exceeded the maximum lawful rate of 8% per annum. To show that the loan transaction was usurious, it was only necessary to make a simple calculation. The interest on $1,663.20 for the full period of 18 months at the rate of 8% per annum is $199.58, or $27.22 less than $226.80, the interest charged by defendant. This calculation makes no allowance for the fact that the note was payable in 18 installments. Nevertheless, it shows that the interest charged by defendant was more than the maximum amount permitted by the statute. If 8% interest on $1,663.20 for the full period of 18 months is less than $226.80, then it is obvious that 8% interest on a loan of $1,663.20, payable in eighteen monthly installments, would be less than $226.80.

Plaintiffs further contend that defendant "was under a duty to *disclose* the facts, not to conceal them by the bland assurance that the interest written into the note had been calculated at 8%", since "a lender and borrower never deal at arm's length" and "the lender always has the advantage, because of the borrower's necessities", citing Feeney v. Cook, Mo.Sup., 242 S.W.2d 524, 529, and other cases involving misrepresentation by silence or concealment. The facts in these cases are unlike those in the instant case. It is true, of course, that the concealment of a material fact may be equivalent to a false representation; however, silence or concealment becomes fraudulent only when there is a duty to speak and disclose. A legal duty to disclose may arise from a relation of confidence or trust, inequality of condition, or the superior knowledge of one party which is not within the fair and reasonable reach of the other party. Jones v. Arnold, 359 Mo. 161, 169, 221 S.W. 2d 187, 193. There was no misrepresentation by silence in the case at bar. No relation of confidence or trust existed between plaintiffs and Smith. There is nothing in the record to show that plaintiffs ever saw Smith or any other agent of defendant before they applied for the loan here involved. As we have seen, plaintiffs had sufficient knowledge of the facts to determine for themselves whether Smith's representation concerning the rate of interest was false. There was no evidence of artifice whereby the plaintiffs were induced to forego an independent investigation of the facts and to rely wholly and solely upon the statements of Smith. It was the duty of plaintiffs, under all the circumstances, to give reasonable attention to the protection of their own interests. This they neglected to do.

After reviewing the evidence and applying the legal principles adverted to, we hold that plaintiffs failed to prove that they had a right to rely upon the alleged fraudulent representations. The court erred in overruling defendant's motion for a directed verdict. While the judgment must be reversed, the cause should be remanded in order to afford plaintiffs an opportunity to amend their petition and to try their case as an action under the usury statutes of this state, if they should be so advised. The commissioner so recommends.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded.

All concur.

### On Motion for Rehearing or to Transfer the Cause

BOUR, Commissioner.

Plaintiffs state in their motion and suggestions in support thereof that this court "has entirely overlooked and failed to give effect to the positive evidence in this case that the note itself contained the distinct and positive representation that the interest charged was at the lawful rate, and to the direct and positive testimony of Smith that the interest was 8% per annum"; that it is this court's view "that plaintiffs could have discovered the fraudulent representations by calculating interest at 8% on $1,663.20 for the period of eighteen months, thereby determining that the amount of $226.80, the interest actually charged by the defendant, was in excess of 8% per annum." After pointing out that the face amount of the note was $1,890 and that the note recited, parenthetically, that interest to maturity at the highest lawful rate had been deducted, plaintiffs continue: "Except to those who are thoroughly experienced in a loan transaction, such as was the agent of defendant, the language of the note itself would seem to indicate that the interest deducted in advance had been computed upon the face amount of the note. That would be the normal conclusion to be drawn by any person of average intelligence, such as the plaintiffs. * * * Plaintiffs did exactly what the average individual would have done; namely, they regarded the interest to be paid as interest on the face of the

note. So regarding it, even if they had made the simple calculation they would have determined that interest at 8% on the face amount of the note is, actually, $226.80, the amount of interest actually charged. The oral representations, also, were equally deceptive. Smith told plaintiffs 'that the interest was 8% per annum.' "

Plaintiffs' contention that they "regarded the interest to be paid as interest on the face (amount) of the note" and that they were justified in doing so was advanced for the first time in their motion for a rehearing or to transfer and the attached suggestions. They stated in their original brief that if they "had not trusted to Smith's honesty and fair dealing they would necessarily * * * have figured the interest * * * at 8% per annum (or ⅔ of 1% per month) *on* *$1663.20*" (italics ours). Ordinarily, a point, argument, or theory advanced for the first time in a motion for a rehearing or to transfer will be disregarded. We prefer, however, to discuss the above argument briefly.

Plaintiffs seem to assume in their argument that their only source of information concerning the interest charge was the recital in the note and Smith's representation that interest at the rate of 8% per annum "had been included in the note", and that all of the details of the transaction were peculiarly within the knowledge of Smith—facts about which plaintiffs knew nothing. As stated in our original opinion, it appears from plaintiffs' testimony that Smith told them that interest on the loan at the rate of 8% per annum had been included in the note as a part of the principal and that such interest amounted to $226.80; that Smith gave them an itemized statement of the various items and amounts included in the principal of the note before they signed it; that plaintiffs knew that the aggregate amount of these items, exclusive of interest, was $1663.20; and that plaintiffs knew that the face amount of the note, $1,890, represented the total amount advanced by defendant, $1,663.20, plus the sum of $226.80, the interest charged by defendant for making the loan. Having so testified, plaintiffs

are in no position to contend that they "regarded the interest to be paid as interest on the face (amount) of the note" and that they were justified in doing so. There is no evidence in the record tending to show "that the interest deducted in advance had been computed upon the face amount of the note." Since the interest charged by defendant ($226.80) was included in the principal of the note ($1,890), it is obvious that the interest was not computed upon such principal amount.

Plaintiffs further contend that "the comment of the court in the instant opinion that 'no relation of confidence or trust existed between plaintiffs and Smith' seems to indicate that the absence of such a relationship, in the opinion of the court, placed upon plaintiffs the absolute duty to disbelieve the representations and test them by an independent investigation." They assert that such a "view" is in direct conflict with the holding in Messina v. Greubel, 358 Mo. 439, 215 S.W.2d 456. The statement or "comment" has been quoted out of context. We made that statement in answering plaintiffs' contention that there was misrepresentation by silence in this case. Our original opinion does not hold that the absence of a confidential relation between plaintiffs and Smith "placed" such a duty upon plaintiffs and the opinion contains no statement to that effect.

In our original opinion we quoted at length from the opinion in Wood v. Robertson, Mo.Sup., 245 S.W.2d 80, 84. Plaintiffs insist that our opinion is in conflict with that case. Their argument in support of this contention is merely a reargument of questions determined by the original opinion and need not be considered here. Supreme Court Rule 1.19, 42 V.A. M.S.

Plaintiffs assert that we have overlooked the tendency of modern decisions to condemn the falsehood of the fraud-feasor rather than the credulity of his victim and as a consequence our original opinion is in conflict with Ashton v. Buchholz, 359 Mo. 296, 221 S.W.2d 496; Bertram v. Kempster, Mo.Sup., 216 S.W.2d 494; Mes-

sina v. Greubel, supra; Aven v. Ellis, 334 Mo. 449, 66 S.W.2d 828, and with the decision of the Springfield Court of Appeals in McBee v. Twin City Fire Ins. Co., Mo. App., 238 S.W.2d 685. Plaintiffs further contend that we have "overlooked 'and failed to apply the established' rule of law that the rule of equal knowledge and opportunity of the parties to know the truth or falsity of a representation has no application where a distinct and specific representation is made to be acted upon", citing Wright v. Weaver, Mo.App., 231 S.W.2d 857.

In Ashton v. Buchholz, supra, an action to recover damages for alleged fraud in a loan transaction, it appeared that a certain mine was owned by the Mid-Continent Quicksilver Corporation, which had been in bankruptcy since 1935; that the defendant was president of Mid-Continent Producers, Inc.; that in order to induce plaintiff to lend defendant $10,000, defendant fraudulently represented to plaintiff that "Producers, Inc.", owned the mining property and that the $10,000 was to be used to employ additional men and to purchase additional equipment to develop the mine. Plaintiff made the loan and the money was used by the defendant and his associates to pay expenses of the reorganization of the bankrupt "Quicksilver" company. Plaintiff, a widow sixty-four years of age, lost the entire amount of the loan. She "had only fourth grade schooling and no business or legal experience whatever." In answering the defendant's contention that plaintiff "was guilty of such negligence in looking after her own interests as to bar any recovery herein", the court said, 221 S.W.2d loc. cit. 503: "We do not agree. * * * It may be conceded plaintiff did not approach the problem of loaning her money as a lawyer or banker would have approached it, and did not demand title research and other proofs. But the flattery of defendant's assiduous attention and the whirlwind campaign he made to secure and close the loan were disarming to one in plaintiff's position. She had been wined and dined for some days. In view of all the instant circumstances, the care used by defendant to have plaintiff view the physical property before seeking the loan from her, and the concealment of so many material facts in his nine-day campaign to secure this loan, we consider that plaintiff was not negligent in that respect and so rule."

In Messina v. Greubel, supra, the plaintiff was induced to invest in the capital stock of an insolvent corporation and to lend money to the corporation through false representations as to the financial condition of the corporation made by the defendants, who were officers and directors of the corporation and knew its financial condition. In affirming a judgment for the plaintiff the Supreme Court said, 215 S.W.2d loc. cit. 458: "It may be that no confidential relation, as commonly understood, existed between the parties, but the knowledge and means of knowledge possessed by defendants as to the affairs of the company were vastly superior to that possessed by plaintiff. * * * Plaintiff was a mechanic who had never owned or operated a business. He was an employee of defendants and had a right to suspect them of some degree of honesty. * * *. Yes, plaintiff could have learned something by an investigation. He could have hired an abstractor to search the records and learn that there were liens on the real estate and part of the equipment which defendants falsely represented to be unencumbered. He could have employed an auditor to check the books * * *. The evidence shows that plaintiff was ignorant of business matters. * * * Under the evidence we hold that plaintiff had a right to rely upon the statements made by the defendants. We are sustained in that holding by our ruling in the case of Monsanto Chemical Works v. American Zinc, Lead & Smelting Co., Mo.Sup., 253 S.W. 1006, 1009."

In Aven v. Ellis, supra, the Supreme Court held that it was a question for the jury whether the officers of the payee bank obtained the endorser's signature on a note by fraudulent representations as to the financial condition of the maker. In McBee v. Twin City Fire Ins. Co., supra, the

154

Springfield Court of Appeals held that a creditor, in accepting a deed of trust as security, had a right to rely upon the debtor's representation that a certain building was located upon land described in the deed of trust. The court said that the creditor was not required to employ a surveyor in order to discover the debtor's fraud, and that fraud will not be condoned *merely* because the victim displayed some degree of faith in his fellowman. It is clear that the facts in the Ashton, Messina, Aven, and McBee cases distinguish those cases from the case at bar. The same is true of Bertram v. Kempster, supra, where the alleged false representations related to the daily, monthly, and yearly income the defendant had received in his operation of a hotel.

Plaintiffs have pointed out that in the Messina and Aven cases the Supreme Court quoted from 26 C.J., Fraud, sec. 59, p. 1144, as follows: "The tendency of modern decisions is not to extend but to restrict the rule requiring diligence, and similar rules, such as caveat emptor and the rule granting immunity for dealer's talk, and to condemn the falsehood of the fraud feasor rather than the credulity of his victim." See also 37 C.J.S., Fraud, § 30. In Conklin v. Missouri Pac. R. Co., 331 Mo. 734, 738, 55 S.W.2d 306, 308, the Supreme Court en banc said: "* * * this court has in recent years gone a long way in its efforts to protect 'the foolishly credulous, as against the machinations of the designedly wicked', as consonant with the administration of pure justice." The court continued: "But we have never lost sight of the principle that the courts will not protect those who, with full opportunity to do so, will not protect themselves." The Conklin case was cited with approval in the recent case of Wood v. Robertson, supra.

In Wright v. Weaver, supra, we said, 231 S.W.2d loc. cit. 861: "This court in the case of Cantley v. Plattner, 228 Mo.App. 411, 67 S.W.2d 125, uses the following language at loc. cit. 130, 131: 'Ordinarily, it is true that neither law nor equity will afford relief for false representations

where the parties stand upon an equal footing or where the subject-matter in dispute is equally known to both; and if one trusts to representations not calculated to impress a person of ordinary prudence, or neglects means of information within easy reach, he should suffer the consequences. McCaw v. O'Malley, 298 Mo. 401, 249 S.W. 41, loc. cit. 44. But such rule has no application where a distinct and specific representation is made to be acted upon or for the purpose of inducing action and which has induced action. Same authorities, supra. In the case of Judd v. Walker, supra (215 Mo. 312, 114 S.W. 979) the court said: "We might add here that the general doctrine laid down in the books as elementary, is that the doctrine of notice and means of knowledge has no application where distinct and positive representations of fact have been made, have been relied upon and have induced action." ' " We do not deem it necessary to state the facts in the Wright, Cantley, and Judd cases. It is sufficient to say that the facts in those cases are unlike those in the instant case.

Plaintiffs earnestly contend, however, that the "general doctrine" referred to in the Judd case is applicable here. If this is true our original opinion cannot stand. The statement in the Judd case has been quoted in many opinions, but a careful study of the cases discloses that this "general doctrine" has never been regarded as a hard and fast rule to be applied in all cases "where distinct and positive representations of fact have been made, have been relied upon and have induced action." The Supreme Court has been careful to point out that each case must be decided upon its own facts. See Messina v. Greubel, supra, 215 S.W.2d loc. cit. 459, where the Supreme Court said that Judd v. Walker and McCaw v. O'Malley, supra, were not inconsistent and that, "Each case of the kind must be determined on its own facts." See also Orlann v. Laederich, 338 Mo. 783, 92 S.W.2d 190, 196, and Poe v. Illinois Cent. R. Co., 339 Mo. 1025, 99 S.W.2d 82, 88. We have found no case and counsel have cited none in which the facts are like or even similar to those in the instant case.

The motion for rehearing or to transfer the cause to the Supreme Court should be overruled. The commissioner so recommends.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The motion for rehearing or to transfer is overruled.

All concur.