**FAIRMONT FOODS COMPANY, a Corporation, Plaintiff-Appellant,**

v.

**SKELLY OIL COMPANY, a Corporation, Defendant-Respondent.**

No. WD 31524.

Missouri Court of Appeals, Western District.

May 4, 1981.

Kelley D. Sears, Stubbs & Mann, P. C., Kansas City, for plaintiff-appellant.

Frederick Beihl, Allen R. Purvis, J. Scott McCandless, Shook, Hardy & Bacon, Kansas City, for defendant-respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

DIXON, Judge.

Plaintiff Fairmont suffered a directed verdict at the close of the plaintiff's evidence on both Count I of its petition alleging fraudulent concealment and Count II of its petition alleging breach of nonstatutory warranties in a deed from defendant Skelly conveying real estate.

Plaintiff Fairmont is a company engaged in the business of operating convenience stores under the trade name U-Totem. As a part of an expansion of their store facilities, an agent of the plaintiff contacted two real estate agents who had prepared a list of possible sites for plaintiff's stores. Among the sites listed by the realtors was the land in question, located at 48th Street and Randolph Road in Clay County, Missouri. That tract was owned by the defendant Skelly. The contract of sale, later consummated by the delivery of a warranty deed, followed without any direct contact between the plaintiff and the defendant or any of their agents.

After the real estate closing, plaintiff commenced the construction of a convenience store and, at some point during the construction of the building, it was determined that there was a limitation of access to the site by reason of the condemnation of access rights by the State Highway Department. This difficulty arose long after the closing of the real estate transaction. Other details of the evidence presented will be set forth in connection with the discussion of the points determinative of the case.

■ The first issue to be determined is the propriety of the trial court's action in sustaining a motion for a directed verdict with respect to Count I. Fairmont asserts that the trial court erred in directing the verdict on the fraud count because a submissible case of fraud was made. In order to establish a cause of action in fraud, Fairmont was required to prove: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted upon by the representee and in the manner reasonably contemplated; (6) the representee's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) the representee's consequent and proximate injury. *Ackmann v. Keeney-Toelle Real Estate Co.*, 401 S.W.2d 483, 488 (Mo. banc 1966). Only (8), Fairmont's right to rely thereon is necessarily involved in the determination of Count I.

■ The plaintiff's proof on this count attempted to show fraud on the part of Skelly upon the basis of the failure to disclose to Fairmont the access limitation upon the property in question. There is no question that Skelly was aware of the limitation of access, and there seems to be no question that this was not directly divulged by Skelly or its agents to Fairmont or its agents. The evidence is inconclusive as to whether the realtors were aware of the limitations of access. Fairmont relies upon the silence of Skelly as constituting a fraudulent concealment. This theory of Fairmont's petition is based upon the case law establishing a duty to speak when there is superior knowledge on the part of one of the parties which is not within the fair and reasonable reach of the other. *Barylski v. Andrews,* 439 S.W.2d 536 (Mo.App.1969); *Alexander v. Johnson Furnace Co.,* 543 S.W.2d 539 (Mo.App.1976); *Parker v. Green,* 340 S.W.2d 435 (Mo.App.1960); *Hanson v. Acceptance Finance Co.,* 270 S.W.2d 143 (Mo. App.1954); *Vendt v. Duenke,* 210 S.W.2d 692 (Mo.App.1948). These cases demonstrate that the duty to speak may arise from inequality of position, a fiduciary relationship between the parties *or* a demonstration of superior knowledge on the part *of one* of the parties which is not within the fair and reasonable reach of the other.

These are alternative bases for the imposition of the duty to speak and proof of a fiduciary relationship or inequality of position does not have to be conjoined with superior knowledge of a defendant to establish liability in fraud, although of course, in a given factual setting, such factors may coexist.

The claim of Fairmont in the instant case must rest upon a theory of superior knowledge since Fairmont concedes there is no fiduciary relationship or inequality of position.

■ The issue in this case really turns on the force of the evidence to show reliance by Fairmont upon the facts as it understood them. The concept of fraud liability based upon nondisclosure couches such reliance in terms of the availability of the information to the plaintiff and the plaintiff's diligence. The rubric of the case law is that the *non*disclosed information must not be within the fair and reasonable reach of the party claiming fraud upon the basis of nondisclosure. Put another way, the burden is on Fairmont to show that the nondisclosed information was beyond their reasonable reach and not discoverable by Fairmont in the exercise of reasonable diligence. It is not sufficient, as Fairmont argues, to show that they did not know of the access limitation; they must also shoulder the burden of proving that in the exercise of reasonable diligence they could not have and would not have discovered the existence of the limita-

tion upon access. Necessarily, a failure of proof as to any one element is fatal to the plaintiff's case. *Hanson, supra.*

■ Admittedly, in reviewing the action of the trial court in directing a verdict, the plaintiff is entitled to the most favorable view of all the evidence and must be given the benefit of all favorable inferences to be drawn therefrom. *Boyle v. Colonial Life Insurance Co. of America*, 525 S.W.2d 811 (Mo.App.1975).

Further, "the action of the trial court in granting the motions for directed verdicts at the close of the plaintiff's evidence is a drastic one and 'should be done only when *all* of the evidence and the reasonable inferences to be drawn therefrom are so strongly against plaintiff that there is no room for reasonable minds to differ.'" *Boyle, supra,* citing *McCarthy v. Wulff*, 452 S.W.2d 164 (Mo.1970).

Even by this standard, the evidence does not disclose diligence by Fairmont or any circumstance that would have frustrated ordinary inquiry.

Skelly argues that the information was a part of the public record and that Fairmont, having constructive knowledge, cannot claim nondisclosure. Assuming that the showing made in the evidence that the circuit court records, which disclosed the limitation of access, constituted a public record, that alone does not defeat Fairmont's action although it is a factor which the trial court might consider on the issue of the availability of the information to Fairmont. *Osterberger v. Hites Construction Co.*, 599 S.W.2d 221 (Mo.App.1980).

The record contains no other affirmative evidence of any inquiry by Fairmont and there is affirmative evidence which demonstrates a lack of diligence and inquiry.

The contract for the sale of the land contained a clause which stated that the purchaser took subject to "easements." The contract also contained a clause which allowed the buyer to avoid the transaction if the necessary curb permits could not be acquired. The testimony of Fairmont's witness showed that had the permits been applied for before closing, as anticipated by the contract, the access limitation would have been discovered. Despite this provision, Fairmont "waived" that provision of the contract. The contract also required a preliminary title report, but the record is silent as to both its delivery and its contents. There is no doubt one existed and was at some time delivered to Fairmont. If Fairmont closed the transaction without any title evidence, that would demonstrate a lack of diligence. If Fairmont closed the transaction with the title evidence and the access limitation was revealed, that would certainly indicate a lack of diligence. If on the other hand, the preliminary title report was available at closing and did not disclose the limitation upon access, it would be supposed that Fairmont, who had possession of the preliminary title report, would have placed it in evidence. Skelly caused the title report to be marked as an exhibit, but it was never offered in evidence.

The determination of what constitutes the appropriate exercise of care on behalf of a party asserting fraud is made on an ad hoc basis:

> It is undoubtedly true that the principle or right of reliance is closely bound up with a duty on the part of the representee to use some measure of precaution to safeguard his interest .... A careful reading of the cases discloses that in determining whether or not reliance upon a representation in a particular case is justifiable or excusable, what constitutes reasonable prudence and diligence with respect to such reliance, and what constitutes a reckless failure to exercise such prudence, the courts consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relation of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and the respective knowledge and means of knowledge of the parties. 37 C.J.S., Fraud, § 30, p. 272; 23 Am.Jur., Fraud and Deceit, sec. 155, p. 960. Each case must be decided upon its own facts. *Mes-*

*sina v. Greubel*, 358 Mo. 439, 215 S.W.2d 456, 459.

*Hanson, supra* ; accord, *Abbey v. Heins*, 546 S.W.2d 553 (Mo.App.1977).

A party must exercise reasonable care in view of his situation to ascertain the truth before he can say he was misled, unless inquiry was prevented by the fraudfeasor. There is no evidence of any sort that Skelly did anything to prevent or interfere with Fairmont's ability to inquire.

When the reasonable care test is applied to the conduct (or lack thereof) of Fairmont in this transaction, in light of the circumstances involved, the nature of the transaction, the form and materiality of the representation, the relation of the parties, the respective intelligence, experience, age and mental and physical conditions of the parties, and the respective knowledge and means of knowledge of the parties, it is readily apparent that Fairmont was less than ordinarily careful or diligent.

The circumstances show two multimillion dollar companies, represented by counsel, participating in a routine property transfer. The circumstances further reveal a contract clause which allowed the party claiming fraud to avoid its obligation in the precise situation presented. There was a waiver of that clause, a reference in both the contract for the sale of the land and the warranty deed to "easements," and a failure to discover the access limitation until 9 months after the conveyance and 13 months after the contracting.

Additionally, there was never any contact between the parties prior to the date of closing, nor did Fairmont ever inquire of Skelly as to whether there were any access restrictions on the property. Fairmont admitted that had the necessary permits been applied for immediately after contracting as called for by the contract, the limitation would have been revealed.

In light of these facts, it cannot be said that Fairmont utilized even ordinary care in relying on the silence of Skelly. As the court said in *Wood v. Robertson*, 245 S.W.2d 80 (Mo.1952):

It has been written that, in treating with release cases, this court has gone a long way to protect the foolishly credulous, as consonant with the administration of pure justice; but the courts will not protect those who, with full opportunity to do so, will not protect themselves. And where the means of knowledge are at hand and are equally available to both parties and the subject matter is alike open to their investigation, if one of them does not avail himself of those means and opportunities he will not be heard to say that he was deceived by the other party's misrepresentation, if there be no confidential relationship between the parties and if no fraudulent devices have been practiced upon the one alleged to have been defrauded to induce him to refrain from making an inquiry, or to anesthetize his sense of caution.

Although *Wood* was a case involving a claim of fraud in the execution of a release, subsequent cases have adopted the language in other fraud situations, including *Whittlesey v. Spence*, 439 S.W.2d 195 (Mo.App.,1969). *Hanson, supra; Gamel v. Continental Insurance Co.*, 463 S.W.2d 590 (Mo.App.1971).

Under the evidence, Fairmont failed to use "some measure of precaution to safeguard [its] interest" and did not demonstrate the diligence required under the circumstances. The trial court properly directed the verdict for the defendant Skelly on Count I.

Fairmont asserts that there was error in the direction of the verdict in favor of Skelly on the warranty count. Fairmont contends that the statutory warranties provided for in § 442.420 RSMo 1978 and contained in the granting clause were limited by the "subject to easements" language in the description of the premises conveyed, but that the common law warranties contained in the habendum were not.

Fairmont asserts that where a deed is ambiguous, the intention therein is to be construed from within the four corners, and that ambiguities are to be resolved in favor of the grantee. They conclude their argu-

ment by stating that the intent of the parties was to limit only the statutory warranties.

Skelly properly asserts that since Fairmont on appeal only claims that the warranty against encumbrances was breached, no other warranty breach can be considered here.

The parties both proceed on the assumption that an inconsistency exists between the granting clause and the habendum and have extensively briefed the issues of whether one clause controls over the other, and the multitude of rules of deed construction as they might apply to this situation. That this assumption and effort by the parties is misguided is evidenced by the plain language in the deed.

The granting clause conveyed the specific tract of land "subject to easements, ... restrictions ...." Use of the term "subject to" in a deed conveying an interest in real property is a qualification of the estate granted. 23 Am.Jur.2d *Deeds* § 217. Thus, the property conveyed was the tract of land qualified by, or including the access limitation.

The habendum then starts with "To have and to hold, *the premises aforesaid*," an obvious reference back to the estate conveyed in the granting clause, which was "subject to" the easements and restrictions. Further, the language in the habendum which immediately precedes the additional warranties of Skelly is as follows: "Skelly Oil Company hereby covenanting that it is lawfully seised of an indefeasible estate in fee in *the premises herein conveyed*; that it has good right to convey *the same*; that *said premises* are free and clear from any encumbrance done or suffered by it or those under whom it claims; and that it will warrant and defend the title of *the said premises* ...." "The said premises" are, of course, the described premises *subject to* the exceptions for easements and restrictions.

All references to the property in the habendum relate back to the estate conveyed in the granting clause, no inconsistency thus exists, and the directed verdict on the warranty count was properly entered. "The unambiguous language of the instrument governs over any extrinsic evidence of the parties' intent. If that language is clear and unambiguous, the intent is gathered from the instrument." *Hooks v. Spies*, 583 S.W.2d 569 (Mo.App.1979); *White v. Meadow Park Land Co.*, 240 Mo.App. 683, 213 S.W.2d 123 (1948). Resolution of the question based on a conflict between the granting clause and the habendum and determining the unstated intent of the parties is unnecessary.

The direction of the verdict on both the fraud count and the warranty count was proper.

Affirmed.

All concur.